CAPÓ, DEMANDANTE Y APELADA, *v.* FERNÁNDEZ, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Guayama en pleito sobre reconocimiento de condominio e indemnización de perjuicios.

Nos. 1801 y 1808.—Resueltos en julio 22, 1919.

HERENCIA—HEREDERO—BIENES HEREDITARIOS—RECLAMACIÓN DE PORCIONES DETERMINADAS EN BIENES HEREDITARIOS—RECLAMACIÓN DEL DERECHO HEREDITARIO — REIVINDICACIÓN — PARTICIÓN DE HERENCIA — CONDOMINIO — JURISPRUDENCIA ANTERIOR SOBRE LA MATERIA: SU LIMITACIÓN.—Los herederos suceden al difunto en todos sus derechos y obligaciones desde el momento mismo de su muerte. Por virtud de la partición cada heredero adquiere la propiedad exclusiva de los bienes que se le hayan en ella adjudicado. Cuando un heredero, existiendo varios, reclama para sí una finca aislada o porción separada de los bienes de la herencia, no basta que alegue simplemente su título de heredero, sino que es necesario, además, que alegue la partición de la herencia. Pero cuando el heredero es uno solo, o cuando existiendo varios, todos se unan, o cuando habiendo varios, uno solo reclama para sí los derechos que de acuerdo con la ley le correspondan en alguno o en todos los bienes de la herencia, el título de heredero es suficiente, sin que sea ne-

cesario alegar la previa partición de. la herencia. La jurisprudencia ante-
rior de este tribunal sobre la materia, debe entenderse limitada por ésta
que ahora se establece.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Antonio Sarmiento.*

Abogados de la apelada: *Sres. Pedro Gómez Lasserre y
Miguel Marcos Morales.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del
tribunal.

Doña Teresa Capó Vázquez, viuda de Rivera, entabló de-
manda en la Corte de Distrito de Guayama pidiendo a la
corte que declarara que la demandante tenía derecho a un
condominio sobre ciento cuatro cuerdas de terreno, resto de
una finca mayor que se describe, equivalente a ocho cuerdas
setenta y siete centésimas de otra. La demanda fué excep-
cionada y la excepción declarada con lugar. La parte dis-
positiva de la resolución de la corte de distrito, dice así:
"Por lo anteriormente expuesto, entiende la corte que si
bien la demanda establece una causa de acción, aceptando
como ciertos los hechos que en la misma se alegan a los
efectos de desestimar la excepción previa interpuesta, sin
embargo entiende la corte que debe enmendarse la misma,
incluyendo las 23 cuerdas 83 centésimas de otra, que es el
total del condominio que reclama la parte demandante." Se-
gún el cálculo que había hecho la demandante correspondíanle
23 cuerdas 83 centésimas en la totalidad de la finca, pero
sólo 8 cuerdas y 77 centésimas en la parte de ella que que-
daba en poder del demandado, y habiendo esto en cuenta
limitó la súplica de la primitiva demanda al reconocimiento
del condominio equivalente a 8 cuerdas y 77 centésimas, e
hizo referencia a otra·demanda que había radicado contra
el mismo demandado en la propia corte de distrito sobre da-
ños y perjuicios por la venta de las otras porciones de la
finca.

La demandante enmendó su demanda de acuerdo con la

resolución de la corte, y reclamó también en ella quince mil
pesos por los frutos producidos o debidos producir por el
condominio.    Volvió a excepcionar la demanda el deman-
dado, y la corte desestimó la excepción.    Contestó entonces
el demandado negando los hechos de la demanda y alegando
como defensas especiales, en cuanto a la reivindicación del
condominio, la prescripción adquisitiva, y en cuanto a la
reclamación de daños y perjuicios, que en el caso hipotético
de que se reconociera el condominio a favor de la deman-
dante, habiendo ésta dejado transcurrir más de quince años
sin reclamar los frutos y productos, había perdido el dere-
cho que hubiera podido tener en su oportunidad.    Y tra-
bada así la contienda, fué el pleito a juicio.

Se practicaron pruebas y finalmente la corte de distrito
dictó sentencia declarando que la demandante tenía derecho
a un condominio proindiviso sobre las ciento cuatro cuerdas
que quedaban en poder del demandado, equivalente a 23 cuer-
das 83 céntimos de otra, anulando el expediente de dominio
sobre la totalidad de la finca tramitado por el demandado,
desestimando la reclamación de daños y perjuicios, e impo-
niendo al demandado el pago de las costas, desembolsos y
honorarios de abogado.

El demandado apeló y también lo hizo la demandante en
cuanto al pronunciamiento de la sentencia relativo a la de-
sestimación de la reclamación de daños y perjuicios.    Con-
sideraremos ambos recursos en una sola opinión y los re-
solveremos por una sola sentencia.

Debe hacerse constar que mientras la apelación se tra-
mitaba, ocurrió el fallecimiento del demandado y fué susti-
tuído por su sucesión compuesta de sus hijos Agustín, Fran-
cisco, Marina, Josefina, Luis, Angel y Enrique Fernández
Colón.

Para no incurrir en repeticiones, nos referiremos a los
hechos tales cuales resultan de las alegaciones y de las prue-
bas examinadas en conjunto.

Allá por el año de 1843 contrajeron matrimonio Francisco Segundo Capó y Belén Vázquez, padres de la demandante, quienes fallecieron, sin haber otorgado testamento, el primero en 1866 y la segunda en 1870, dejando al morir seis hijos nombrados Francisco Emiliano, Enrique, Belén, Arístides, Africa Ana y Teresa. No consta que la herencia de los esposos Capó-Vázquez se partiera en legal forma.

Durante su matrimonio, Francisco I. Capó hubo de José Rosario Vázquez por escritura pública de 15 de noviembre de 1859 una hacienda denominada ''Palo Seco'', situada en la jurisdicción de Cayey. Esa hacienda al morir Capó y luego su esposa, pasó a sus herederos, y fué administrada por Francisco Fernández Navas, el primitivo demandado. Este, en el año económico de 1894 a 1895, presentó una planilla jurada declarando, a los efectos del pago de contribuciones, dicha finca como perteneciente a la Sucesión Capó y administrada y cultivada por él.

En 1879 Enrique Capó, hijo de los esposos Capó-Vázquez, cedió sus derechos y acciones a la herencia materna a Trinidad Rivera.

En 8 de abril de 1891, por escritura pública, Trinidad Rivera cedió los derechos y acciones de referencia a Joaquín Fernández Navas. Y por la misma escritura Teresa Capó Vázquez, la demandante, hija de los esposos Capó-Vázquez y esposa de Trinidad Rivera, manifestó que igualmente era dueño, como heredera, de los derechos y acciones de su madre, doña María Belén Vázquez, y los cedía, renunciaba y traspasaba a favor del dicho Joaquín Fernández Navas.

Por escritura pública de 23 de julio de 1895, Arístides y Ana Capó cedieron sus derechos y acciones a la hacienda ''Palo Seco'', adquiridos por herencia, a su hermana Belén.

El 24 de julio de 1895 comparecieron ante notario, de una parte, Belén Capó y Vázquez y Joaquín Fernández Navas, y de otra, Francisco Fernández Navas, el primitivo demandado. Los comparecientes de la primera parte, entre

otras cosas, expusieron "que son dueños de unas acciones sobre la antigua hacienda "Palo Seco", situada en el barrio de Montellano de este término municipal, cuyas acciones les pertenecían por los conceptos siguientes: a la primera o sea a doña Belén Capó le corresponde por su propio dere- cho como heredera de su finado padre don Francisco I. Capó; y otras dos acciones como cesionaria de sus hermanos doña Ana Africa y don Arístides * * *. El segundo, don Joa- quín, le corresponden dos acciones como cesionario de la he- redera de doña Teresa Capó y Vázquez y de don Trinidad Rivera * * *." Y dichos comparecientes otorgaron, en- tre otros particulares. *"Primero.* Que por la presente ven- den y traspasan a favor del otro compareciente don Fran- cisco Fernández todos cuantos derechos y acciones puedan corresponderles sobre los terrenos de la hacienda 'Palo Seco' sin reserva de ninguna especie subrogando al comprador en el mismo lugar y grado que a los cedentes corresponde * * *." El comprador aceptó la escritura.

Así las cosas, Francisco Fernández Navas instó un expe- diente en la Corte de Distrito de Ponce para justificar a su favor, el dominio de la hacienda "Palo Seco". No pudo pre- sentarse como prueba el expediente porque no se encontró en los archivos de la corte, pero de la certificación expedida por el Registrador de la Propiedad de Guayama consta que el expediente se aprobó, siendo Fernández declarado judi- cialmente, el 30 de diciembre de 1901, dueño de la totalidad de la finca, quedando inscrito su derecho en el registro el 15 de marzo de 1902. De la certificación del registrador apa- rece que "don Francisco Fernández Navas, mayor de edad, casado, propietario y vecino de Cayey, acudió al Tribunal de Distrito de la ciudad de Ponce promoviendo expediente para justificar el dominio de esta finca la que hubo por ce- sión que le hizo don Joaquín Fernández como cesionario de los herederos don Enrique y doña Teresa Capó, y la here- dera doña Belén por sí y como cesionaria de sus hermanos

los herederos doña Ana Africa y don Arístides, por escritura ante el notario de Cayey don Casimiro Morales el 24 de julio de 1895, habiéndole cedido también las señoras doña Isabel y doña Luisa Lleras Vázquez como únicas representantes de la sucesión de don Rosario Vázquez por convenio privado el crédito y derecho que contra esa finca pudieran tener.''

Inscrito ya el dominio a su favor en el registro, el demandado segregó y vendió tres porciones de la finca, así: una de ciento sesenta y seis cuerdas al Gobierno de los Estados Unidos por escritura de 30 de diciembre de 1913, otra de dos cuerdas a Miles K. Taulbee, por escritura de 27 de abril de 1904, y otra de dos cuerdas a Luis Muñoz Morales. Según el registro, la finca quedó reducida a 108 cuerdas.

Tales son, en resumen, los hechos que constan de los autos y que deben tenerse en cuenta a los efectos de resolver en justicia la cuestión planteada.

No hay duda alguna con respecto a la identidad de la finca. Las cuerdas que quedan aun en poder de los demandados, proceden de la hacienda ''Palo Seco'' adquirida por el padre de la demandante en 1859. Lo que es necesario aclarar en primer término es si la demandante tiene en verdad un derecho al condominio que reclama, y si está en condiciones de establecer la reclamación de acuerdo con la ley y la jurisprudencia.

Cuando Francisco I. Capó compró la finca de que se trata, estaba casado con doña Belén Vázquez. La propiedad se adquirió, pues, para la sociedad de gananciales.

Los bienes gananciales son comunes del marido y de la mujer y pertenecen a cada uno de ellos por mitad, pues en virtud del matrimonio se establece entre los dos consortes una sociedad legal, diferente de las otras, por la que se comunican recíprocamente sus adquisiciones. Véanse las leyes 1, 2, 3, 4 y 5, título 4, libro 10, Nov. Recop.

La mujer, muerto el marido, adquiere la propiedad plena

y la administración de la mitad de ganancias hechas en el matrimonio, y puede disponer libremente de ellas. En la misma forma puede el marido disponer de su mitad de gananciales. Véase la Ley 14 de Toro.

El sistema de bienes gananciales ha estado entre nosotros en vigor por siglos. La presunción de que todos los bienes adquiridos durante el matrimonio, con las excepciones bien establecidas, pertenecen a la sociedad de gananciales, no tiene su origen en el Código Civil Revisado, ni en el Código Civil Antiguo. Sus raíces son más hondas.

La sociedad de gananciales constituída por los esposos Capó-Vázquez se disolvió por la muerte del marido. Don Francisco Capó murió intestado. Sus derechos se trasmitieron en el acto mismo de su muerte a sus herederos. ¿Quiénes eran éstos? Consta de los autos que sus seis hijos legítimos Francisco Emiliano, Enrique, Belén, Arístides, Africa Ana y Teresa. No aparece que la sociedad de gananciales se liquidara ni que la herencia se partiera, pero la ley fija cuando no existe testamento la extensión del derecho de cada heredero. Los hijos heredan por partes iguales. Eran seis. A cada uno le correspondía, pues, una sexta parte de la herencia paterna.

Desde el instante mismo de la muerte de don Francisco I. Capó cada uno de sus hijos y herederos quedó convertido en condueño de la sexta parte de la mitad de la finca, esto es, en condómino de la totalidad de la hacienda "Palo Seco", en una dozava parte indivisa.

Transcurrieron algunos años, durante los cuales la finca permaneció sin dividirse, y murió doña Belén Vázquez, la viuda, sin otorgar testamento, y en el acto mismo de su muerte pasó también su caudal a sus herederos, sus hijos. Y de este modo, en el año de 1870, los seis hijos quedaron dueños de la totalidad de la hacienda.

La finca continuó indivisa. Su propiedad constaba a nombre de la Sucesión Capó. El demandado Francisco Fer-

nández Navas la administró y cultivó y reconoció como dueña de ella a la indicada sucesión.

No hay duda alguna de que la demandante era uno de los herederos y no hay duda alguna tampoco de que vendió los derechos y acciones que le correspondían en la finca por la herencia materna. Pero la demandante jamás vendió los derechos que tenía por la herencia paterna y esos derechos son los que precisamente reclama en este pleito.

Se alega que no habiéndose practicado la partición de la herencia, la demandante no está en condiciones legales para establecer con éxito su reclamación y se invoca la jurisprudencia de esta misma corte establecida en los casos de *Esteves v. del Río et al.*, 7 D. P. R. 280, 298; *Escalona v. Registrador de la Propiedad*, 9 D. P. R. 581; *Fernández et al., v. Velázquez*, 17 D. P. R. 747; *Velilla v. Pizá et al.*, 17 D. P. R. 1112; *Cruz et al. v. Ortiz*, 17 D. P. R. 1180; *Dávila v. Dávila, et al.*, 18 D. P. R. 112; *Trinidad, et al. v. Sucesión Trinidad et al.*, 19 D. P. R. 647; *Vega, et al. v. Rodríguez, et al.*, 21 D. P. R. 334; y *Cristián et al. v. Escobar et al.*, 23 D. P. R. 277.

La jurisprudencia citada se basa en el artículo 1035 del Código Civil Revisado, igual al 1068 del Código Civil Antiguo, que dice que "la partición legalmente hecha confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados", y en la jurisprudencia del Tribunal Supremo de España. Citaremos la sentencia de 17 de diciembre de 1873, publicada en 28 Jurisprudencia Civil, 690. Julián Bayo demandó a Juan Cuder en solicitud de que se le condenase a dejar libre y a su disposición la cuarta parte de cierta finca urbana. La dicha finca perteneció a doña María González quien murió bajo testamento dejando como herederos a su hijo Manuel López y a sus nietos Julián, el demandante, y Gabina Bayo. No obstante corresponderle la mitad solamente, Manuel López permutó la casa con otra del demandado Cuder. La demanda fué declarada sin lugar, y

confirmando la sentencia dictada, el Tribunal Supremo de España, en uno de sus considerandos, se expresó así:

"Considerando que es doctrina legal declarada expresamente por este Tribunal Supremo que ninguno de los herederos o partícipes de una herencia adquiere el dominio de determinados bienes de la misma, ni los puede demandar en tal concepto hasta que en su partición se le hayan adjudicado específicamente; y habiendo apreciado la sala sentenciadora como fundamento principal y legalmente decisivo para absolver a don Juan Cuder de la demanda de don Julián Bayo que éste no ha probado el hecho de que se le haya adjudicado como uno de los herederos de su abuela doña María de las Nieves González la cuarta parte de la casa en cuestión que como de su pertenencia ha demandado a Cuder para que se la dejase a su libre disposición, es evidente que haya que estar y mantener aquella apreciación de dicha sala mientras no se invoque y se demuestre que con ella se ha infringido ley o doctrina legal concreta, nada de lo cual se hace en el presente recurso."

Un estudio más detenido de esta materia nos lleva a concluir que si bien la jurisprudencia establecida por el Tribunal Supremo de España y por esta Corte Suprema de Puerto Rico está basada en la ley, se le ha dado demasiada extensión en muchos casos concretos, entre otros en el mismo que acabamos de citar decidido por la Corte Suprema de España y en algunos de los resueltos por esta Corte Suprema de Puerto Rico. Dicha jurisprudencia debe quedar limitada al caso en que el heredero, existiendo varios, reclame para sí una finca aislada o porción separada, pero no debe aplicarse al caso de un solo heredero, ni a aquel en que existiendo varios todos se unan, o en que habiendo varios, uno reclame para sí los derechos que de acuerdo con la ley le correspondan.

Citaremos algunas sentencias de la Corte Suprema de España que apoyan el criterio que sustentamos.

En la de 29 de octubre de 1885, se dijo:

"Que acreditada la cualidad de heredero, tiene el demandante personalidad para reclamar derechos que provengan del testador, sin

que pueda perderla por la circunstancia de no ser único, que producirá consecuencias de otro orden.''. 58 J. C. 632.

En la de 18 de octubre de 1894, se expresó:

''Que las acciones que nacen del dominio de la finca de un difunto, inscrito aquél en el registro de la propiedad, pueden ejercitarse, mientras no se hayan practicado la división y adjudicación del caudal hereditario, por todos o por alguno de los **herederos del** finado, los cuales, por el hecho sólo de la muerte del mismo, le suceden en todos sus derechos y obligaciones, según dispone el artículo 661 del Código Civil.'' 76 J. C. 219.

En la de 29 de mayo de 1899, se decidió:

''Que a partir del hecho de que al fallecimiento de una persona tenía por título traslativo inscrito en el registro el dominio pleno sobre un inmueble, es indiscutible que desde el momento de ocurrir su muerte lo adquirieren sus hijos por sucesión directa, y la declaración de herederos abintestato inscrita a su favor en el registro constituye un título de dominio bastante para ejercitar la acción reivindicatoria, mientras que otro mejor no la obste.'' 87 J. C. 273, 274.

En la de 23 de noviembre de 1903, se estableció:

''Que conforme con lo mandado en el artículo 661 del Código Civil, ha resuelto reiteradamente el Tribunal Supremo que el heredero, como sucesor del difunto en todos sus derechos y obligaciones, tiene acción y personalidad para pedir cuanto a su interés convenga sin el concurso de los otros coherederos, siempre que no sea en perjuicio de éstos, y que, en su caso, se sujete a las leyes que regulan la comunidad de bienes.'' 96 J. C. 693.

Y en la de 19 de noviembre de 1904, se resolvió:

''Que los artículos 1068 y 1072 del propio Código no obstan a que todos los herederos interesados en un bien o derecho proindiviso puedan reclamarle sin aguardar a su partición o adjudicación. 99 J. C. 392.

Aunque en verdad las sentencias que acabamos de citar no se refieren a pleitos iguales al presente, ellas ponen de relieve el principio fundamental que nos guía al decidir este caso fijando el alcance de nuestra propia jurisprudencia so-

bre la materia, a saber: que los herederos suceden al difunto en todos sus derechos y obligaciones desde el momento mismo de su muerte.  Por virtud de la partición es adjudicada a cada heredero la parte que le corresponde y esa parte desde entonces constituye un bien particular suyo, pero no es necesaria la partición para que el heredero adquiera, y reclame en el caso de que se niegue por otra persona su derecho, su parte proporcional en todos y cada uno de los bienes de la herencia, parte proporcional que puede fijar el mismo testador, dentro de ciertos límites, o que fija con toda claridad la ley cuando no existe testamento.

Por virtud de una honda meditación sobre el asunto, nos hemos convencido de que aplicar nuestra jurisprudencia y la de la Corte Suprema de España en el sentido de exigir en todos los casos una partición previa, sería. hacer imposibles en la práctica reclamaciones verdaderamente justas. La partición es necesaria cuando se reclaman bienes aislados, deslindados. separados, procedentes de una herencia pero adjudicados ya a determinado heredero.  El título de heredero es bastante cuando lo que se pide es que se reconozca al demandante en los bienes de la herencia el derecho que la misma ley le asigna.

En este caso concreto sometido a nuestra consideración el primitivo demandado contrató directamente con los herederos de los esposos Capó-Vázquez o con sus cesionarios. Todo lo que él tiene en la hacienda "Palo Seco", lo adquirió así.  A la demandante correspondían derechos sobre dicha finca como heredera de sus padres.  Vendió los procedentes de la herencia materna.  Jamás se desprendió de los procedentes de la herencia paterna.  Al morir su padre, por ministerio de la ley, la demandante se convirtió en dueña de una sexta parte de la mitad indivisa de la finca que a su padre correspondía y es aun dueña de esa sexta parte porque válidamente jamás se ha desprendido de ella.

No es necesaria la partición de la herencia porque la

demandante pide, aunque en forma equivocada como veremos en seguida, que se condene al demandado al reconocimiento de su derecho, no a que le entregue una porción determinada de la finca separada de ella. Esto no quiere decir que no pueda acumularse a la acción de reconocimiento o reivindicación de un condominio, la de partición, pero la demandante no lo ha hecho así, limitándose a solicitar el reconocimiento de su derecho.

No estamos conformes en que el condominio pueda fijarse en determinado número de cuerdas, como pide el demandante y acordó la corte. Una sola cuerda de buen terreno, o bien situada, en una finca, vale por diez de mal terreno, o mal situadas, de la misma finca. Ni menos lo estamos en que se reconozca en las cuerdas que quedan en poder del demandado todo lo que correspondía a la demandante en la totalidad. La demandante tenía en la totalidad y en cada metro cuadrado o partícula de la finca, una dozava parte como heredera de su padre, y esa proporción subsiste lo mismo en el terreno vendido que en el terreno que queda en poder de los demandados. La acción de la demandante es directa contra las tierras. Si por virtud de preceptos de las mismas leyes, parte de esas tierras están fuera del alcance de la demandante por haber sido adquiridas por personas que tienen la condición legal de terceros, tal circunstancia perjudica a la demandante a la que sólo queda la acción que pueda asistirle—no prejuzgamos en modo alguno este punto—contra el vendedor. En las tierras que quedan en poder de los demandados sólo puede reivindicar la demandante su dozava parte y nada más. Nada de lo dicho en este párrafo debe entenderse como prejuzgando lo que pueda hacerse en un pleito sobre partición.

La cuestión relativa a la prescripción es sencilla. En el caso de que la acción ejercitada fuera prescriptible, los demandados no tienen un justo título que alegar en contra del de la demandante. Sólo la prescripción extraordinaria hu-

biera podido servir de base para adquirir el demandado, por virtud de su posesión como dueño, el derecho que la demandante reclama en este pleito. Y no habían transcurrido treinta años desde el de 1895 hasta el 1917 en que se interpuso la demanda.

Hay otra cuestión suscitada por la parte demandada que introduce alguna confusión en el estudio y resolución de este asunto. Fernández Navas sostiene, y así se hizo constar, en el expediente de dominio, que también adquirió los derechos que alegaban tener doña Lucía y doña Isabel Llera, herederas de don José Rosario Vázquez, vendedor de la finca en 1859. Parece que hubo dificultades desde muy antiguo entre comprador y vendedor, que se originó un pleito entre sus sucesiones que duró diez años, sin que conste si se resolvió o no en definitiva, pero en verdad la finca pasó a poder de Capó y luego quedó en poder de su sucesión y fué a los componentes de ésta a quienes fué comprando sus derechos el demandado primitivo. Si por alguna circunstancia fuera Capó responsable para con don José Rosario Vázquez o su sucesión, habiendo el primitivo demandado adquirido los derechos de esa sucesión puede ejercitarlos contra los herederos de Capó entre los cuales está la propia demandante. Tampoco prejuzgamos en modo alguno esta cuestión.

Resta sólo considerar la reclamación de daños y perjuicios. Nos limitaremos a decir que hemos examinado las alegaciones y las pruebas y estamos conformes con el criterio sustentado por el juez sentenciador.

La setencia declara nulo el expediente de dominio en su totalidad. Tal declaración no se solicitó por la parte demandante.

Por virtud de todo lo expuesto, entendemos que, resolviendo ambos recursos, debe modificarse la sentencia apelada de modo que en su parte dispositiva quede redactada así, eliminando de ella totalmente el pronunciamiento relativo a la nulidad del expediente de dominio: ''1°., que debe resolver,

y resuelve, que la demandante tiene derecho a un condominio de una dozava parte proindivisa en las tierras que procedentes de la hacienda 'Palo Seco' quedan en poder de los demandados y que según el registro se componen de 108 cuerdas y lindan por el norte con Ana Baldrich y Joaquín Aponte, por el sur con el Gobierno Federal, por el este con don Francisco Fernández y por el oeste con Miguel Muñoz, Pedro Rodríguez, Joaquín Aponte y Patricio Rodríguez, y ordenar, como ordena, a los demandados que reconozcan a la demandante tal derecho con todas las consecuencias que de dicho reconocimiento se deriva, y 2°., que debe decidir como decide no haber lugar a condenar a los demandados al pago de la suma de quince mil pesos reclamada en la demanda, todo sin especial condenación de costas.''

> *Resolviendo los dos recursos contra la misma sentencia apelada se modifica, en el sentido de eliminar lo relativo a la nulidad del expediente de dominio, se reconoce al demandante derecho a un condominio, y se declara no haber lugar a condenar a los demandados al pago de los $15,000 reclamados.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.