TOMÁS MIGUEL RIVERA COLL, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. RAMÓN NEGRÓN SOTO, JUEZ, demandado.

*Número*: O-74-307      *Resuelto*: 3 de febrero de 1975

*Vicente Santori Coll,* abogado del peticionario; *María E. Gorbea de Méndez,* abogada de la Sucesión de Martha María Santori Coll.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

La presente acción se inició en el Tribunal Superior, Sala de San Juan, mediante petición sobre declaratoria de herederos al óbito de doña Martha María Santori Díaz, fallecida en estado de soltería el 20 de abril de 1973 sin haber otorgado testamento. A doña Martha no le sobrevivieron ascendientes ni descendientes. Se reclamó en la petición que su herencia correspondía a dos hermanos de ella, de doble vínculo, y a dos sobrinos, hijos de otro hermano que había fallecido antes que ella. El niño Tomás Miguel Rivera Coll intervino alegando su condición de heredero de doña Martha en representación a su vez como hijo adoptivo de don Michael Santori Díaz, hermano de la causante y quien había fallecido antes que ella. Se opuso el promovente de la declaratoria de herederos aduciendo que, habiendo contraído segundas nupcias la viuda de Santori Díaz y habiendo sido subsiguientemente adoptado Tomás Miguel por el segundo esposo de ella, esa segunda adopción rompió el vínculo existente entre el niño y la familia natural de su primer padre adoptante y por tanto el niño no podía acudir a la herencia de doña Martha en su representación. A solicitud de Tomás Miguel expedimos auto de *certiorari* para revisar la resolución que sostuvo este planteamiento. Resolvemos que la resolución es correcta.

Don Michael Santori Díaz y su esposa doña Margarita Coll iniciaron una acción en el Tribunal Superior, Sala de San Juan, para adoptar a Tomás Miguel, nacido en Nueva

York el 22 de febrero de 1959. Cumplidos todos los trámites requeridos por ley y estando el caso pendiente de resolución falleció el señor Santori Díaz el 9 de diciembre de 1959. Dos días más tarde el tribunal emitió resolución por la que aprobó la adopción y en su virtud el niño fue inscrito en el Registro Demográfico como hijo de don Michael y de doña Margarita. Se le dio el nombre de Michael John Santori Coll. Fue posteriormente declarado heredero de don Michael y oportunamente se formalizaron las correspondientes operaciones para adjudicarle su participación en el caudal relicto al óbito de su padre.

Doña Margarita se casó con don Tomás Rivera en el 1963. Cinco años más tarde don Tomás solicitó y obtuvo la adopción de Michael John como hijo suyo, cambiándose su nombre a Tomás Miguel Rivera Coll. Esta era la situación al ocurrir el deceso de doña Martha María Santori Díaz, de quien reclama ser heredero Tomás Miguel en representación de su primer padre adoptivo.

La situación no está específicamente prevista en la legislación puertorriqueña ni ha sido suscitada antes ni resuelta por nosotros. A partir del 15 de junio de 1953, con la aprobación de las leyes Núm. 85 y Núm. 86 de ese año, 32 L.P.R.A. secs. 2691–2698 y 31 L.P.R.A. secs. 531–539, respectivamente, tanto el procedimiento para la adopción como la figura jurídica de la adopción son el producto de nuestra autoctonía. De ahí que recurrir a interpretaciones de estatutos foráneos, por persuasivos que parezcan, resulta en futilidad. La decisión del problema ante nos tiene por tanto que depender de nuestra propia interpretación de la intención legislativa al aprobarse las citadas leyes.

Al adoptarse en Puerto Rico el Código Civil de 1902 se derogó expresamente el Art. 177 del Código español que aquí regía y que disponía que el hijo adoptivo no adquiría derecho alguno a heredar a su adoptante, en ausencia de un pacto en contrario en la escritura de adopción. Véase *Sosa* v. *Sosa*, 66

D.P.R. 606, 609 (1946). El Código de 1902 constituyó el primer intento puertorriqueño de liberalizar la institución de la adopción y dispuso lo siguiente en sus Arts. 202 y 203 que pasaron a ser, respectivamente, sin cambios en la redacción, el 132 y el 133 de la edición de 1930:

"Artículo 132.—La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado."

"Artículo 133.—El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior."

Estas disposiciones fueron "injertadas" en la institución, según dijimos en *Valladares de Sabater* v. *Rivera Lazú*, 89 D.P.R. 254, 258 (1963), copiándolas del Art. 214 del Código Civil de Luisiana. Su efecto fue conceder al adoptado el derecho a heredar a su padre adoptante, *Sosa*, supra, con la única limitación, que señalamos en *Valladares*, página 611, de no causar perjuicio a los derechos de otros herederos forzosos, que subsistirían como si la adopción no se hubiera verificado. Disponía además el Código en su Art. 137 (edición de 1930) que "el adoptado conservará los derechos que le correspondan en su familia natural," derechos que según sostuvimos en *Sosa* incluían el de heredar, tanto por testamento como sin él. La situación respecto de los derechos hereditarios del hijo adoptivo era pues, antes de aprobarse la citada Ley Núm. 86 del 1953, sumamente anómala. Seguía vinculado a su familia natural, conservando todos sus derechos en ella, incluyendo el de heredar; era a sus vez considerado como hijo legítimo de sus padres adoptantes con los derechos y deberes inherentes a esa condición; pero si coincidía en su familia adoptiva con herederos forzosos de ésta, quedaba excluida su adopción, como "si no se hubiese verificado", en cuanto pudiese afectar los derechos de los herederos forzosos.

La Ley Núm. 86 tuvo el propósito de poner remedio a esa situación y con ese fin hizo una nueva redacción de todo

el articulado del Código Civil relativo a la adopción. Los Arts. 132 y 133 quedaron redactados en la siguiente forma, que es la actual, según aparecen en 31 L.P.R.A. secs. 533 y 534, respectivamente:

"Artículo 132.—El adoptado será considerado para todos los efectos legales como un hijo legítimo del adoptante. El adoptante será considerado como el padre legítimo del adoptado."

"Artículo 133.—Con la adopción cesarán todos los derechos, deberes y obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado."

■ La nueva redacción eliminó la subsistencia de todo vínculo hereditario entre el adoptado y su familia natural o biológica e integró al hijo adoptivo en la familia del adoptante como un hijo legítimo de éste, "a todos los efectos legales," quedando derogada la disposición que hacía salvedad de los derechos de otros herederos forzosos del adoptante. La intención legislativa quedó claramente expresada en la redacción de esos artículos y es innecesario buscarla en el debate que precedió a la aprobación de la ley, que hemos examinado, y que nada apunta que no esté articulado en la síntesis que de esa intención expresan con toda adecuación los Arts. 132 y 133.

Es obvio, sin embargo, que en el debate legislativo no se planteó una situación de hechos como la que aquí nos ocupa. No se tuvo en mente que un hijo adoptivo pudiera ser subsiguientemente adoptado por otros padres. No obstante, las expresiones de la intención legislativa respecto del propósito de la Ley Núm. 86 sirven de pauta para la solución de la presente controversia. Al ser informado el Proyecto de la Cámara 795 por la Comisión de lo Jurídico Civil del Senado, el cual se convirtió en la Ley Núm. 86 de 1953, se expresó así el presidente de la Comisión, recomendando su aprobación:

"El artículo 133, tal como queda reenactado [sic] por este proyecto dispone que con la adopción cesarán todos los derechos,

deberes y obligaciones del adoptado en su familia natural o biológica y los de esta con el adoptado. El propósito de esto es permitir que el adoptado arraigue completamente en su familia adoptiva sin que se debiliten los nexos entre éste y sus padres adoptivos. En la vida real no se tienen dos padres ni se tienen dos madres." *Diario de Sesiones,* Vol. II, Tomo IV, 1953, pág. 2373.

Si el propósito expreso del legislador fue arraigar completamente al hijo adoptivo en la familia del adoptante rompiendo todo vínculo con su familia biológica no vemos cómo pueda lograrse ese propósito en el caso de una subsiguiente adopción sin romper igualmente todo vínculo con la familia de su padre adoptivo anterior.

Al discutirse en la Cámara de Representantes el P. de la C. 795 expresó el representante señor Polanco Abréu:

"Esta legislación que nosotros proponemos establece igualdad de derechos y deberes entre el hijo adoptado y los hijos biológicos. Establece que no deben establecerse o señalarse diferencia de clase alguna entre los hijos adoptivos y los hijos biológicos." *Diario de Sesiones,* Vol. II, Tomo II, 1953, pág. 1292.

■ Resolver que el hijo adoptivo, al ser adoptado por segunda vez y adquirir otro padre ha de conservar su filiación con la familia de su anterior padre adoptivo, equivaldría a reconocer una condición especial contraria a la expresión del representante Polanco Abréu. Se establecería una diferencia fundamental entre los hijos biológicos y los adoptivos, a saber: un hijo biológico no puede tener más familia que la de su padre y la de su madre; un hijo adoptivo tendrá tantas familias como cuantas veces pueda ser adoptado. Sería un absurdo.

El peticionario hace citas de jurisprudencia de varios estados de los Estados Unidos, que relacionamos al margen. (¹)

---

(¹) *Russell* v. *Russell,* 14 Ky. LRER 236 (1892); *Patterson* v. *Boowning,* 146 Ind. 160, 44 N.E. 993 (1896); *Villier* v. *Watson,* 168 Ky. 631, 182 S.W. 869 (1916); *Dreyer* v. *Schrick,* 105 Kan. 495, 185 Pac. 30 (1919); *Holmes* v. *Curl,* 189 Iowa 246, 178 N.W. 406 (1920); *Re Sutton,* 161 Minn.

Los casos que cita resuelven, en síntesis, (1) que el hijo adoptivo puede heredar de sus padres adoptivos y también de sus padres biológicos, y (2) por tanto no hay razón por la cual no pueda heredar también de dos o más padres adoptivos. Es decir, el fundamento de la segunda posición tiene su base en la primera. Y la primera, en los estados en que así se ha resuelto, tiene por base la ley sobre adopción de esos estados, que no rompe el vínculo de parentesco entre el adoptado y su familia biológica. Esa, como hemos visto, no es la situación estatutaria en nuestra jurisdicción.

■ Cita también el peticionario el caso de *Valladares de Sabater*, supra, que reitera el principio de que los estatutos sobre adopción deben ser interpretados liberalmente, a favor del adoptado. No nos estamos apartando de *Valladares*. Pero la liberalidad en la interpretación no puede conducirnos ni a violentar la intención legislativa, ni a consagrar absurdos. La liberalidad en la interpretación de los Arts. 132 y 133 justificó en *Valladares* concluir que el hijo adoptivo, al convertirse para todos los fines en un hijo legítimo del adoptante, adquiere frente a la familia de éste todos los derechos de la filiación legítima, incluyendo el de concurrir como heredero en esa familia. La evolución de la institución de la adopción en Puerto Rico demuestra que antes de aprobarse la Ley Núm. 86 de 1953 el hijo adoptivo, además de heredar a su padre adoptante, conservaba el derecho a heredar a su padre biológico y a su familia. La Ley Núm. 86 privó al hijo adoptivo de todo derecho respecto de su parentela biológica y no puede decirse que por ello no fuera una pieza legislativa liberal.

En aras de la liberalidad no podemos ir más allá de la ley. No se puede crear, por interpretación, una condición de privilegio para el adoptado, permitiendo que conserve en su familia anterior, sea biológica o sea adoptiva, todos los

426, 201 N.W. 925 (1925); *Re Egley*, 134 P.2d 943 (Wash. 1943); *Re Talley*, 109 P.2d 495 (1941); Succession of Gambino, 73 So.2d 800 (La. 1954).

332

derechos que antes tenía, como si la subsiguiente adopción no se hubiese verificado. La adopción desarraiga al adoptado de todo vínculo de parentesco y de todo derecho respecto de su familia biológica. Borra la anterior filiación. Para todos los efectos, el adoptado se considera como si hubiese nacido hijo del adoptante. La subsiguiente adopción por otro padre tiene el mismo alcance respecto de la previa filiación adoptiva.

*Se anulará el auto expedido, confirmándose así la resolución recurrida.*