CONSTANCIA RIVERA RIVERA, demandante y recurrente, *v.* JUAN, MARÍA JESÚS y MANUEL MONGE RIVERA, demandados y recurridos.

*Número:* R-85-177 *Resuelto:* 17 de junio de 1986

*Adolfo Negrón Cruz,* abogado de la peticionaria; *José Ortiz Rodríguez,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

En *Rivera Coll* v. *Tribunal Superior,* 103 D.P.R. 325, 331–332 (1975), resolvimos que:

En aras de la liberalidad no podemos ir más allá de la ley. No se puede crear, por interpretación, una condición de privilegio para el adoptado, permitiendo que conserve en su familia anterior, sea biológica o sea adoptiva, todos los dere-

chos que antes tenía, como si la subsiguiente adopción no se hubiese verificado. La adopción desarraiga al adoptado de todo vínculo de parentesco y de todo derecho respecto de su familia biológica. Borra la anterior filiación. Para todos los efectos, el adoptado se considera como si hubiese nacido hijo del adoptante. La subsiguiente adopción por otro padre tiene el mismo alcance respecto de la previa filiación adoptiva.

▄▄▄ Ratificamos la anterior norma. Además de ser sabia, nada ha hecho el legislador para variarla. Ahora bien, si al momento de la adopción el adoptado tiene bienes patrimoniales, aunque sean hereditarios, conserva los derechos propietarios sobre ellos. Los hechos del presente caso nos dan la oportunidad de adoptar la teoría romanista de que los bienes de la herencia no pasan al patrimonio del heredero hasta que éste acepte la herencia, ya sea esta aceptación expresa o tácita. Por las razones que expondremos más adelante rechazamos la teoría germánica de que los derechos se transmiten automáticamente a los herederos desde el momento de la muerte del causante. Adoptada esta teoría, debemos devolver el caso al tribunal de instancia para que éste determine, luego de una vista evidenciaria o a base de una estipulación de hechos, si los recurridos habían aceptado la herencia de sus padres biológicos antes de ser adoptados. Veamos el historial de esta controversia.

Don Higinio Rivera Cruz y doña Petrona Rivera Medina, durante la vigencia de su matrimonio, procrearon un total de once hijos, nombrados: Guillermina, Teófila, Agustín, Jesús María, Constancia, Antonio, Eligio, Luis, Juan, María Jesús y Manuel Rivera Rivera. De éstos, tres murieron (Antonio, Eligio y Luis) sin haber procreado hijos.[1] El día 31 de enero de 1932 falleció don Higinio y el 14 de octubre de 1937 doña Petrona, ambos intestados, abriéndose en esos momentos sus respectivas sucesiones a favor de sus hijos. Art. 603 del

---

[1] De la Resolución sobre Declaratoria de Herederos del 14 de enero de 1980 no surge la fecha del fallecimiento de estos tres hijos.

Código Civil, 31 L.P.R.A. sec. 2085. Luego de transcurrir largos años sin haberse hecho declaratoria de herederos, partición de herencia o interpelación judicial para que los hijos aceptaran o repudiaran la herencia, ([2]) Juan, María Jesús y Manuel, fueron adoptados por don Juan Monge Márquez y doña Antonia Rivera Medina el 6 de abril de 1966, casi treinta años después del fallecimiento de su madre biológica. Para esa fecha Manuel tenía cuarenta y cuatro años de edad, Juan tenía cuarenta y María Jesús contaba treinta y cuatro años. ([3])

Los otros cinco hermanos solicitaron y obtuvieron, el 14 de enero de 1980, una declaratoria de herederos. En ella el Tribunal Superior de San Juan los declaró únicos y universales herederos de sus padres, don Higinio y doña Petrona. El 16 de mayo de 1980, éstos iniciaron una acción sobre expediente de dominio de una finca ubicada en el barrio Hato Puerco de Loíza, hoy barrio Campo Rico de Canóvanas. Se alegaba que dicha finca había sido poseída por los peticionarios y sus padres durante cincuenta y cuatro años o más.

El 7 de agosto de 1980, María Jesús y Juan Monge Rivera presentaron una oposición donde alegaban que ellos heredaban de sus padres biológicos hasta el momento de su adopción, y solicitaban que se les reconociera su participación en la finca. Idéntica solicitud hicieron Víctor Manuel y Jorge Luis Rivera Correa, hijos de Manuel Monge Rivera, el tercer adoptado, que había fallecido antes del inicio del presente litigio. Alegaron que en fechas indeterminadas algunos de los here-

---

([2]) Es de notar que nuestro Código Civil no tiene plazo fijo para reclamar la herencia, aunque algunos autores recomiendan un plazo de treinta años al asimilarla a una acción real, Art. 1863 del Código Civil, 31 L.P.R.A. sec. 5293, y otros la asimilan a la acción de partición de herencia, la cual no prescribe, Art. 1865 del Código Civil, 31 L.P.R.A. sec. 5295. Véase E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. 1, pág. 154 n. 58.

([3]) A la fecha del fallecimiento de su padre contaban 15, 11 y 5 años de edad, respectivamente.

deros se habían cedido entre sí parte de sus derechos. El 2 de octubre de 1981, el Tribunal Superior, Sala de Carolina (Arill Miranda, Juez), declaró sin lugar la oposición y solicitud de intervención. Para ello invocó la doctrina transcrita de *Rivera Coll* v. *Tribunal Superior*, supra, en cuanto al desarraigo de vínculo entre el adoptado y su familia biológica como consecuencia de la adopción. Los opositores solicitaron la reconsideración en tiempo, la cual fue considerada por el tribunal. Por razones que no surgen de los documentos ante nos, no fue hasta el 21 de marzo de 1985 que el tribunal emitió la resolución que revocó su anterior dictamen y permitió la intervención solicitada, al resolver que debía corregir su interpretación de *Rivera Coll* v. *Tribunal Superior*, supra.

En esta ocasión determinó que la adopción rompe los lazos existentes entre la familia biológica del adoptado y éste desde el momento de la adopción. Razonó que habiendo fallecido los padres biológicos antes de la adopción de 1966, o sea, en 1932 el padre y en 1937 la madre, los interventores no renunciaron a los derechos hereditarios que tenían al momento de la muerte de sus padres biológicos. Además resolvió lo siguiente:

> La condición de herederos no se produce en forma automática con la muerte del causante, sino lo que se produce con el deceso es el llamamiento del heredero potencial para que decida cuál opción seleccionará dentro de las varias que el ordenamiento le ofrece; esto es: acepta o repudia la herencia y de aceptarla si la acepta a beneficio de inventario.
>
> En el caso de autos los interventores han indicado con sus actos que aceptan la herencia al adquirir de sus hermanos parte de los terrenos que forman parte del caudal hereditario y al solicitar la intervención mediante la oposición en este procedimiento. El Código Civil no establece término para aceptar o repudiar la herencia, mientras no sea requerido judicialmente para que acepte o repudie, artículo 959 del Código Civil, 31 L.P.R.A. 2787. Apéndice 21.

Considerado el recurso como un *certiorari*, revisamos mediante orden para mostrar causa. Se elevaron los autos originales de donde surge que no se celebró vista evidenciaria.

Es significativo que de los autos originales no surge que las partes presentaran prueba testifical o documental sobre las alegadas adquisiciones o cesiones de derechos hereditarios.

Al momento de ser adoptados los interventores, como hemos señalado, eran mayores de edad. Ya regía en nuestra jurisdicción la nueva redacción del articulado del Código Civil relativo a la adopción. Los Arts. 132 y 133 (31 L.P.R.A. secs. 533 y 534), disponen lo siguiente:

> *Art. 132.* El adoptado será considerado para todos los efectos legales como un hijo legítimo del adoptante. El adoptante será considerado como el padre legítimo del adoptado.

> *Art. 133.* Con [la] adopción cesarán todos los derechos, deberes y obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado.

Distinto a *Rivera Coll* v. *Tribunal Superior*, supra, en que el menor interventor, que había sido adoptado en dos ocasiones, pretendía heredar de una hermana de su primer padre adoptante fallecida luego de la segunda adopción, en el presente caso la apertura de la sucesión de los padres biológicos de los interventores ocurrió mucho antes de su adopción. Es por ello que nuestra interpretación de los hechos del presente caso debe armonizar los Arts. 132 y 133 del Código Civil con lo dispuesto en los Arts. 603 y 610 de ese mismo cuerpo, 31 L.P.R.A. secs. 2085 y 2092. [4]

El punto clave para dilucidar la controversia ante nos estriba en determinar si, al momento de ser adoptados, los inter-

---

[4] Estos últimos disponen:

*"Art. 603.* Los derechos a la sucesión de una persona se trasmiten desde el momento de su muerte."

*"Art. 610.* Los herederos suceden al difunto por el hecho solo de su muerte, en todos sus derechos y obligaciones."

ventores ya habían adquirido la condición de herederos y, como tal, la de partícipes de una comunidad de bienes con un derecho propietario sobre una cuota indivisa de la misma. Según Puig Brutau, "[e]stos bienes o relaciones jurídicas en comunidad no formarán un patrimonio distinto del de cada titular sino que *la participación de cada uno estará perfectamente integrada en su patrimonio personal*". (Énfasis nuestro.) J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1975, T. V, Vol. I, pág. 363. Ello es así porque la sucesión, testada o intestada, es uno de los modos de adquirir la propiedad. Art. 549 del Código Civil, 31 L.P.R.A. sec. 1931.

En materia de adquisición de herencia existen dos sistemas diametralmente opuestos: uno denominado germánico y el otro conocido como romano. Véase R. Roca Sastre, *Estudios de Derecho Privado*, Madrid, Ed. Rev. Der. Privado, 1948, Vol. II, pág. 1 y ss. Bajo el sistema germánico, se adquiere la herencia automáticamente al momento del fallecimiento del causante. Roca Sastre, *op. cit.*, págs. 1–2, nos describe dicho sistema en los siguientes términos:

> Según este sistema germánico, una vez fallecido el causante, la herencia es adquirida automáticamente, *ipso iure* o sin solución de continuidad, por el heredero o herederos. El llamado a la herencia pasa inmediatamente a ser heredero, o sea, tan pronto se produce la delación a su favor. No se requiere para ello acto alguno de aceptación expresa o tácita de la herencia; el solo hecho de la delación provoca, por ministerio de la ley, la adquisición de la herencia a favor de aquel a quien ha sido deferida. Basta la delación para que se produzca la adquisición de la herencia por el llamado a ella. La adición o aceptación hereditaria, en rigor no existe, pues no es requisito para la adquisición. Entre el momento de la delación y el de la adquisición no hay espacio de tiempo: la adquisición de la herencia se produce sincrónicamente con la delación.

Como dice Vélez Torres:

. . . En dichos sistemas, por lo tanto, se presume la aceptación de la herencia por parte del heredero llamado tan pronto ocurre la muerte del causante, y aunque se permite la aceptación o renuncia subsiguient[e], la aceptación expresa posterior solamente tiene el efecto de confirmar la aceptación presunta anterior, a la vez que constituye la abdicación de la facultad de renunciar. J. R. Vélez Torres, *Derecho de Sucesiones,* Madrid, Ed. Sáez, 1974, pág. 268.

Según Diego Espín, y citando con aprobación a Ruggiero, " 'no solamente se adquiere *ipso jure* la propiedad: la posesión de los bienes hereditarios le es transferida inmediatamente con la apertura de la sucesión, sin que se requiera aprehensión material de aquéllos' ". D. Espín Cánovas, *Manual de Derecho Civil Español,* 5ta ed., Madrid, Ed. Rev. Der. Privado, 1978, pág. 46.

Bajo la institución del derecho romano, aunque la muerte del causante es el punto en que tiene lugar la apertura de la sucesión, ello no convierte automáticamente al llamado en heredero. Según este sistema:

. . . [L]a delación o llamamiento no convierte al llamado en heredero, sino que para ello hace falta un acto de aceptación expresa o que permita entender que se ha producido en forma tácita. La adquisición hereditaria descansa, pues, en la conjunción de estos dos elementos o requisitos: delación o llamamiento y aceptación o adición. Del llamamiento sólo nace a favor del llamado el derecho de adquirir la herencia mediante la aceptación, el llamado *ius delationis* o *ius adeundi*. Si lo usa aceptando se convierte efectivamente en heredero. Puede hacerlo así por aceptación expresa o adición de la herencia *(adictio)* o de forma tácita, mediante observar una conducta que implique aceptación *(pro herede gestio)*. Los actos de mera conservación o administración de los bienes de la herencia no implican aceptación; es decir, no convierten al llamado en heredero. Puig Brutau, *op. cit.,* pág. 162.

Según esta teoría, el fenómeno de la sucesión se divide en cuatro fases: la apertura de la sucesión, la vocación, la delación y la adquisición de la herencia. L. Díez-Picazo y A. Gu-

llón, *Sistema de Derecho Civil*, 2da ed., Madrid, Ed. Tecnos, 1982, Vol. IV, pág. 412; F. Espinar Lafuente, *La herencia legal y el testamento*, Barcelona, Ed. Bosch, 1956, pág. 142; Espín Cánovas, *op. cit.*, pág. 40; J. L. Lacruz Berdejo y F. A. Sancho Rebullida, *Derecho de Sucesiones*, Barcelona, Ed. Bosch, 1971, Vol. I, pág. 51. Según estos últimos autores, las cuatro etapas del proceso adquisitivo se desarrollan como sigue:

a) *Apertura de la sucesión.* La sucesión de una persona se abre siempre y forzosamente en el momento de su muerte; no antes ni después. La apertura significa, simplemente, que mientras el cuerpo se ha convertido en *cadáver,* la suma de las relaciones jurídicas transmisibles que se imputaban a la persona se ha convertido en *herencia,* en espera de un sucesor.

b) *Vocación a la herencia.* Supone el llamamiento de un sujeto de derecho viviente, a la herencia. Puede ser un llamamiento actual o virtual; a un heredero de primer grado, o a otros, para el caso de no suceder el primeramente llamado.

c) *Delación de la herencia.* "Delata hereditas intelligitur quando quis possit adeundo consequi". La delación supone un paso más; no sólo hay una persona determinada y existente llamada a la herencia, sino que ésta puede aceptar. La posibilidad inmediata de aceptar la herencia es la característica de la delación.

d) *Adquisición.* Consiste en el hecho de quedar investido como heredero del conjunto —relativo— de titularidades transmisibles del causante. (Énfasis en el original.)

Algunos autores opinan que lo que surge con la muerte del causante, según la tesis romanista, es una oferta de la herencia, equivalente al momento de la delación, que "no es sino el correlato de la 'oferta de contrato' ". Espinar Lafuente, *op. cit.*, pág. 143. Según Roca Sastre, *op. cit.*, pág. 5, "[d]el simple hecho de la delación surge una oferta de la herencia, o sea, un simple llamamiento a ser heredero, que sólo atribuye al llamado una *facultas adquirendi*, o sea, un derecho de adqui-

sición de la herencia, que también se denomina *ius delationis* o *ius adeundi*".

Según el profesor E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. 1, pág. 33, lo que se produce con la apertura de la sucesión es "el derecho a adquirir la propiedad". Para él, "el ordenamiento jurídico contempla el que exist[a]n derechos, cuyo titular, *si bien no existe de inmediato, habrá de existir posteriormente*". (Énfasis nuestro.) Íd., pág. 36.[5] Scaevola describe a la perfección lo que constituye, para los que favorecen la teoría romana, el momento de adquisición de la condición de heredero en los siguientes términos:

> Para que se transmitan bienes y derechos a una persona es preciso ante todo que la persona exista. *Para que haya transmisión a favor del heredero es menester que el heredero lo sea ya. Y mientras la herencia está yacente, ¿quién es el heredero? El instituído no lo es, porque puede aceptar o renunciar*. Los llamados por la ley están en el mismo caso. ¿Es, entonces, que se transmite al presunto heredero?

> Digámoslo sin vacilar: *no se transmite a nadie, ni la ley ha podido ni querido semejante significación*. Los que más se acercan a la verdadera doctrina son los que estiman la transmisión de que se trata como realizada condicionalmente. Pero también esto supone una persona a quien los bienes y derechos se transmiten, a condición de que acepte la herencia, y tal supuesto es inadmisible, como contradictorio de la doctrina inversa expuesta en el mismo artículo 440, de que el que no acepte la herencia no ha poseído los bienes en ningún momento. *Si el presunto heredero no ha aceptado aún, si puede o no aceptar, y, por lo tanto, no haber poseído en ningún momento, ¿qué queda de la transmisión?*

---

[5] Véanse, además, L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 2da ed., Madrid, Ed. Tecnos, 1982, Vol. IV, pág. 412; D. Espín Cánovas, *Manual de Derecho Civil Español*, 5ta ed., Madrid, Ed. Rev. Der. Privado, 1978, Vol. V, pág. 40; J. Castán Tobeñas, *Derecho civil español, común y foral*, 8va ed., Madrid, Ed. Reus, 1978, T. VI, Vol. I, pág. 118; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1975, T. V, Vol. I, pág. 103.

*La ley transmite, sí, los bienes y derechos del causante, pero en un terreno hipotético, puramente ideal, abstractamente jurídico. La transmisión se efectúa en favor del heredero; pero, ¿quién es el heredero? El que lo sea, el que acepte. Cuando llega el momento de la aceptación es cuando se conoce al heredero; entonces y sólo entonces tiene lugar la verdadera transmisión. Todos los derechos han estado hasta aquel punto y hora pendientes de la aceptación; no ha habido otra cosa que un depósito, una retención, una suspensión de entrega.* (Énfasis nuestro.) (⁶) Q. M. Scaevola, *Código Civil*, 5ta ed., Madrid, Ed. Reus, 1944, T. XVII, págs. 422–423.

La doctrina española se encuentra dividida y en debate en cuanto a cuál de los sistemas, germánico o romano, es seguido por el Código Civil español, de donde provienen los artículos de nuestro Código Civil concernientes a la aceptación y repudiación de la herencia, produciéndose de esta forma una polémica "muy intensa". A. Blanco, *La adquisición de la herencia en el Derecho Civil de Puerto Rico*, 34 Rev. Jur. U.P.R. 5, 6 (1965). Sin embargo, los autores están contestes en que la mayoría de los comentaristas se han expresado a favor de la tesis romanista. Roca Sastre, *op. cit.*, pág. 13; Espín Cánovas, *op. cit.*, págs. 47 y 65; Lacruz Berdejo y Sancho Rebullida, *op. cit.*, pág. 55; Espinar Lafuente, *op. cit.*, pág. 142; Blanco, *op. cit.*, pág. 6; Vélez Torres, *op. cit.*, pág. 269. Los comentaristas que se han expresado a favor de esta tesis son: Puig Brutau, *op. cit.*, págs. 166, 168, 200 y 208; Roca Sastre, *op. cit.*, pág. 14; Díez-Picazo y Gullón, *op. cit.*, pág. 651; Scaevola, *op. cit.*, 2da ed., 1950, T. XII, págs. 65–66; J. M. Manresa, *Comentarios al Código Civil Español*, 7ma ed., Madrid, Ed. Reus, 1972, T. V, pág. 397; Espín Cánovas, *op. cit.*, pág. 48; Castán Tobeñas, *op. cit.*, pág. 118; M. Albaladejo, *La adquisición de la herencia en el Derecho Civil español*, 8 An. Der.

---

(⁶) Lacruz y Sancho entienden que lo único que se pasa al presunto heredero ipso jure con la muerte del causante es la posesión civilísima. J. L. Lacruz Berdejo y F. A. Sancho Rebullida, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1981, T. V, pág. 46.

Civ. 3, 6 (1955); F. C. De Diego, *Instituciones de Derecho Civil*, 2da ed., Madrid, Ed. J. San Martín, 1959, T. III, pág. 362. A favor de la tesis germánica se han manifestado: Espinar Lafuente, *op. cit.*, pág. 144; G. García Valdecasas, *La adquisición de la herencia en derecho español*, 28 Rev. Der. Privado 89 (1944); M. Gitrama, *La administración de la herencia en el derecho español*, Madrid, Ed. Rev. Der. Privado, 1950, págs. 32 y 457 n. 77. [7] Los argumentos y de ambos bandos a favor de uno y otro sistema, de acuerdo con los postulados específicos del Código Civil español, son resumidos por Díez-Picazo y Gullón, de quienes citamos *in extenso:*

> La discusión gira en torno a una serie de preceptos a los que convendrá hacer referencia.
>
> Se trae a colación, en primer lugar, el artículo 440: "La posesión de los bienes hereditarios se entiende transmitida al heredero sin interrupción y desde el momento de la muerte del causante, en el caso de que llegue a adirse la herencia". Para los defensores de la tesis germanista el artículo 440 constituye una prueba clara de que el sistema seguido por el Código es el de adquisición *ipso iure*. Sin embargo, se ha señalado que, aunque el precepto se inspira en la máxima "le mort saisit le vif" y trata de impedir las soluciones de continuidad, no se enfrenta con el problema de la adquisición de los bienes de la herencia, sino simplemente con su posesión. No hay ningún inconveniente en admitir que la apertura de la sucesión produce con la delación un automático traspaso posesorio en favor del llamado, lo cual no tiene nada que ver en definitiva con la cuestión de la adquisición de la herencia. Además, se ha señalado que el propio artículo 440 supedita el efecto posesorio a la aceptación: "en el caso de que llegue a adirse la herencia".
>
> El segundo punto de la discusión lo constituye el artículo 609. Los germanistas alegan que dicho artículo contempla la

---

[7] Antonio Hernández Gil esboza una tesis intermedia donde "la adquisición de la herencia tiene lugar *con la aceptación y desde la muerte del causante*". A. Hernández Gil, *Lecciones de Derecho Sucesorio*, Madrid, Ed. Sucrs. de Rivadeneyra, 1969, pág. 52.

sucesión como un modo de adquirir la propiedad. La propiedad y los derechos sobre los bienes se adquieren por sucesión testada e intestada, dice el precepto. Los romanistas, sin embargo, replican que el artículo 609 configura como un modo de adquirir a la sucesión *mortis causa* considerada como mecanismo complejo, pero que no resuelve en absoluto ni tiene por qué resolver el problema de determinar en qué preciso momento se produce la adquisición de la propiedad de los bienes y de la titularidad de los derechos pertenecientes a la herencia.

La discusión ha girado muy vivamente en torno al artículo 657: "Los derechos a la sucesión de una persona se transmiten desde el momento de su muerte". Literalmente tomado no cabe duda de que presta un fuerte apoyo a la tesis germanista, pues parece decir que la transmisión se produce en el momento mismo de la muerte de la persona. Sin embargo, el artículo 657 no es ni mucho menos una norma clara y aparece además contrarrestado por otros pasajes del Código. En primer lugar conviene señalar que el artículo 657 es el primero que el Código dedica a las sucesiones, por lo cual no es probable que en el pórtico mismo haya querido el legislador dejar resuelto el problema que a nosotros nos ocupa. Más bien parece una norma vacua de apertura de capítulo con una referencia al momento en que la sucesión comienza: con la muerte de la persona. Por otra parte, literalmente entendido, el precepto es confuso, pues no dice que con la muerte se transmitan al heredero la propiedad de los bienes y la titularidad de los derechos del difunto, sino que se transmiten los "derechos a la sucesión". El derecho a la sucesión puede ser el *ius delationis* o derecho a suceder.

El artículo 661 refuerza la interpretación germanista: "Los herederos suceden al difunto por el solo hecho de su muerte en todos los derechos y obligaciones". Literalmente entendido parece que preconiza la tesis de que la adquisición de la herencia se produce con el solo hecho de la muerte. Sin embargo, en contra cabe observar que su alcance queda anulado por una interpretación sistemática del Código (en el que la aceptación es pieza clave a la que se dedican numerosos preceptos) y que no posee otro cometido que tratar de explicar en qué consiste el "título universal" referido inmediatamente antes en el artículo 660 (la sucesión a título univer-

sal sería suceder en todos los derechos y obligaciones). Por otra parte, había que demostrar que los herederos de los que habla el artículo 661 son los llamados a la herencia, y no los que la han aceptado con el efecto retroactivo que le da el artículo 989.

El artículo 989, al mandar que los efectos de la aceptación se retrotraigan en virtud de una *fictio iuris* al momento de la apertura de la sucesión, parece dar la razón a la tesis romanista . y hace depender el efecto adquisitivo del acto de aceptación. El artículo 989 carecería por completo de sentido si el Código hubiese acogido los postulados germanistas y la herencia fuera inmediatamente adquirida.

El artículo 1.005, que recoge el sistema de la *interpellatio in iure,* por medio del cual los interesados (por ej., acreedores o personas sucesivamente llamadas) pueden interrogar al heredero para que se pronuncie definitivamente sobre la aceptación, aparte su abolengo romanista, está presuponiendo también que es la aceptación el punto clave del fenómeno adquisitivo y no tendría sentido si el interpelado hubiera ya automáticamente adquirido.

Lo mismo cabe decir del artículo 1.006, pues si el que fallece sin aceptar ni repudiar transmite a sus herederos el derecho que él tenía, es porque no les transmite la propiedad y los derechos existentes en la herencia como debería ocurrir si la hubiera adquirido ya.

Por último, el artículo 1.016 al someter a prescripción el derecho de aceptar remarca la misma línea. (8) Díez-Picazo y Gullón, *op. cit.,* págs. 649–651. Véase, además, Roca Sastre, *op. cit.,* págs. 15–27.

La jurisprudencia española se ha inclinado por la tesis romanista. Así, la S. de 5 de julio de 1958, Núm. 19, Aranzadi, LXVII Repertorio de Jurisprudencia 229, establece que "no puede desconocerse que, conforme a los artículos 657 y 661 del Código Civil, los herederos tienen derecho a la herencia y su-

---

(8) Los artículos del Código Civil español citados corresponden a los Arts. 369, 549, 603, 610, 609, 944, 959, 960 y 970 de nuestro Código Civil (en el orden mencionados), 31 L.P.R.A. secs. 1443, 1931, 2085, 2092, 2091, 2772, 2787, 2788 y 2807.

ceden al difunto en todos sus derechos y obligaciones desde el momento y por el solo hecho de su muerte, y si bien, *no obstante esta última expresión, se requiere, además, la aceptación de la herencia*". (Énfasis nuestro.) La S. de 19 de octubre de 1963, Núm. 4142, Aranzadi, XXX Repertorio de Jurisprudencia 2644, establece que "comprendiendo la herencia, por determinación del [Art.] 659, todo el patrimonio de la persona fallecida, dicho precepto, unido al 657 y 661, vienen a señalar el momento en que la sucesión se transmite con referencia al heredero, *transmisión que no puede tener inmediata efectividad, por requerir una decisión favorable, la aceptación de la herencia*". La S. de 9 de junio de 1964, Núm. 3216, Aranzadi, XXXI Repertorio de Jurisprudencia 1942, 1943, explica en su tercer "considerando" que "la posesión sólo se entiende transmitida desde la aceptación de la herencia, y por ello el llamado no aceptante no la tiene, pero el que acepta sí, siguiendo con ello el sistema romano".

En cuanto a otras jurisdicciones, hay variantes de ambos sistemas. Muchas siguen la fórmula adoptada en nuestro Código Civil, que da margen a argüir a favor de cualesquiera de ellos. Siguen este último enfoque: Francia y Bélgica, Arts. 775 y 777; Portugal, Arts. 2.031 y 2.033; Chile, Arts. 1.225 y 1.239; Colombia, Arts. 1.282 y 1.296; Ecuador, Arts. 1.215 y 1.229; El Salvador, Arts. 1.165 y 1.178; Honduras, Arts. 1.172 y 1.186; Méjico, Art. 1.660; Uruguay, Art. 1026, y Venezuela, Arts. 1.001 y 1.013. Con disposiciones de tendencia romana sobre la aceptación de la herencia están Italia, en su Art. 459 y Argentina, Art. 3.378. Artículos sobre adquisición ipso jure hacen que las siguientes jurisdicciones sigan el sistema germánico: Perú, Art. 657; Alemania, Arts. 1.942 y 1.953, y Suiza, Art. 560.

En Puerto Rico, los autores, al igual que en España, se han expresado a favor de uno u otro sistema de adquisición de herencia. Sin embargo, la mayoría, también igual que en España, aboga por la tesis romana. A favor de la misma se han

expresado González Tejera, *op. cit.*, págs. 36, 166–167; Blanco, *op. cit.*, pág. 8. También Vélez Torres, *op. cit.*, págs. 268–270, aparenta adoptar dicha posición. Velázquez apoya la tesis germánica. G. Velázquez, *Teoría del Derecho Sucesorio Puertorriqueño*, 2da ed. rev., New Hampshire, Ed. Equity Pub. Corp., 1968, Sec. 51, págs. 51 y 52.

Este Tribunal, aunque no ha tenido la oportunidad de enfrentarse directamente al problema, ha hecho expresiones, que pudieran ofrecer apoyo a una u otra teoría. Así, en *Figueroa* v. *El Registrador*, 18 D.P.R. 260 (1912), resolvimos que mientras no haya aceptación de herencia, mientras esté yacente, debe suponerse la existencia de la personalidad del difunto. En iguales términos nos expresamos en *Sucesión Criado* v. *Martínez et al.*, 25 D.P.R. 334 (1917), al decir que "[m]ientras la herencia permanece yacente por haberse abstenido de aceptarla los llamados por ley, se supone existente la personalidad del difunto". *Íd.*, pág. 336.

En *Capó* v. *Fernández*, 27 D.P.R. 715, 725 (1919), dijimos que los herederos se convierten en condueños de los bienes del caudal "desde el momento mismo de la muerte" del causante. Por ser dicho pleito instado por uno de los coherederos, el cual solicita su participación de una sexta parte de la mitad de la sociedad de gananciales correspondiente a su padre, ello en sí era una aceptación tácita de la herencia. Así fue posteriormente resuelto en *Vidal* v. *Monagas*, 66 D.P.R. 622, 641 (1946).[9] Sobre la opinión de *Capó* v. *Fernández*, supra, expresa Blanco lo siguiente:

> No creemos, a pesar de la forma enfática en que el Tribunal se pronuncia, que esté tomando partido sobre el problema de la aquisición de la herencia en uno u otro momento de los señalados: No es éste el punto que se debate; no tenía

---

[9] Nótese que la aceptación tácita consiste en solicitar su participación en la herencia. Distinto sería la situación si se solicita meramente una declaratoria de herederos, lo cual no constituye aceptación tácita. *Escalona* v. *Sucesión Castro*, 17 D.P.R. 774 (1911).

consiguientemente por qué hacerlo; no alude a esa cuestión; afirma lo que se acaba de transcribir para dar valor a la reclamación y justificar los derechos de que efectivamente hacía uso la actora. Pero en realidad de lo que se trata es de fundamentar jurídicamente la acción, porque la ejercitada, propiamente encaminada al reconocimiento de su condición de heredera, no exigía una adjudicación previa del bien sobre el que en definitiva habría de recaer su derecho, bastándole tal reconocimiento para tener acceso a la parte del caudal hereditario detentado indebidamente por el demandado, después su sucesión. Blanco, *op. cit.*, págs. 14–15.

La decisión en *Amy* v. *Aponte et al.*, 29 D.P.R. 145 (1921), es susceptible de interpretación a favor de uno u otro sistema. A la pág. 149 expresamos que "si los herederos no aceptan o repudian la herencia de su causante no le suceden en todos sus derechos y obligaciones". Ello establece la doctrina aceptada por los romanistas. Sin embargo, más adelante y citando con aprobación a Robles Pozo, dijimos que "[a] partir del fallecimiento del causante, la sustitución de éste por heredero o causa-habiente es simultánea, sin que sea necesario la aceptación, porque ésta se presupone siempre como consecuencia de la sucesión, equivaliendo la repudiación por el heredero a la renuncia de un derecho que ya se tiene o se posee y de una representación adquirida que se abandona y se rechaza o se condiciona al aceptarla ostensiblemente con arreglo a las facultades concedidas por derecho". Sin embargo, si analizamos los hechos específicos del caso, vemos que dicha expresión es *dictum* nuestro, ya que a tenor con los Arts. 958 y 959 del Código Civil, 31 L.P.R.A. secs. 2786 y 2787, la propia demanda constituye una interpelación judicial para que aceptasen o repudiaran la herencia y, pasado el término del Art. 959 sin hacerlo, se reputa como aceptada la misma.

Sobre este punto es en extremo revelador el comentario del profesor González Tejera, *op. cit.*, págs. 175–176:

Si examinamos los hechos del caso *Amy* veremos que el pronunciamiento que acabamos de transcribir es *dictum* del

Tribunal. No era necesario para resolver la controversia que tenía ante sí. Se trataba de una demanda en cobro de un pagaré incoada por un acreedor contra los hijos y el cónyuge supérstite del fiador. Estos se cruzaron de brazos limitándose a alegar que no habían aceptado la herencia. La demanda y emplazamiento cumplían con el requisito del Art. 958 del Código Civil, a los efectos de intimarlos para que aceptaran o repudiaran la herencia de su causante. Habiendo transcurrido en exceso el término del Art. 959, habían aceptado la herencia, y transcurrido asimismo el plazo del Art. 969, ya no podían acogerse al beneficio de inventario.

De aceptarse el *dictum* del caso *Amy, supra*, en todas sus consecuencias, no tendría razón de ser gran parte del articulado del Código Civil que hemos venido analizando. Si la repudiación se reduce solamente a la renuncia de un derecho que ya se tiene, el derecho a deliberar sobre si se acepta o se repudia, que regula el Art. 964, no tendría lógica. Tampoco la tendría la regulación de la aceptación de la herencia a beneficio de inventario, con las consecuencias que dispone el Art. 977 del Código Civil, en torno a la responsabilidad limitada, la reserva de acciones contra el caudal a favor del heredero beneficiario y la separación de patrimonios, que como vimos, perdura mientras la aceptación beneficiaria no haya culminado en la partición. Por último, carecería asimismo de lógica, la regulación que de la repudiación hace el Código en sus Arts. 958 a 963, particularmente lo dispuesto en el Art. 960, al efecto de que, con la muerte del heredero, sin haber aceptado o repudiado la herencia de su causante se transmite a sus herederos a su vez, como uno de los derechos del caudal, el derecho que tenía y que no llegó a ejercitar. Estas normas tienen sentido únicamente en la medida en que no se llegue a ser heredero en forma automática, contrario a lo resuelto en el caso *Amy*. (Citas omitidas.)

Otra decisión posterior, *Banco Comercial de P.R.* v. *García*, 51 D.P.R. 735 (1937), cita con aprobación lo transcrito del caso de *Amy* v. *Aponte*, supra. Sin embargo, por versar dicho pleito sobre un cobro de dinero contra la sucesión por una deuda contraída por su causante, la propia radicación de la demanda también constituía una intimación judicial para

que los herederos aceptasen o repudiaran la herencia a tenor con el Art. 959. Como éstos tampoco habían aceptado o repudiado luego de la intimación, la herencia también se tuvo por aceptada. ([10]) Así lo reconoce la propia opinión, *Banco Comercial de P.R.* v. *García*, supra, págs. 738–739.

El Art. 369 del Código Civil, 31 L.P.R.A. sec. 1443, establece que "[l]a posesión de los bienes hereditarios se entiende trasmitida al heredero, sin interrupción y desde el momento de la muerte del causante, *en el caso de que llegue a adirse la herencia*". (Énfasis nuestro.) "Adir" significa, "[a]cepar la herencia tácita o expresamente". *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I, pág. 25. Si el propio Código Civil impone el requisito de la aceptación antes de que se puedan transmitir al heredero los bienes de su causante, ello es un claro indicio de que dicho cuerpo legal adopta la tesis romana. Dado el lenguaje terminante del Art. 133 y el análisis que hemos hecho anteriormente, resolvemos que dicha tesis es la que debemos adoptar. La tesis romanista debe utilizarse para resolver este caso. Ello es así porque el "heredero lo es tal por sus condiciones de pariente del testador". Scaevola, *op. cit.*, 2da ed., 1950, T. XII, pág. 66. Si el presunto heredero no adquiere dicha condición por no aceptar la herencia, no podrá adquirirla luego de

---

([10]) Al respecto también se expresa A. Blanco, *La adquisición de la herencia en el Derecho Civil de Puerto Rico*, 34 Rev. Jur. U.P.R. 5, 30–31 (1965):

"El criterio del fallo es fundado y señala pautas tan lógicas al respecto que no dudamos habrá de ser reiterado por cualquier tribunal que conozca de caso semejante: Basta la reclamación por el acreedor para que se entienda implícito el requerimiento al heredero para aceptar o repudiar, y éste, por idéntica razón, deberá manifestarse, dentro del plazo que el Juez le señale o del que marca la ley, para evitar la responsabilidad que le alcanza por las de su causante, mediante la repudiación formal: El problema de la adquisición queda marginado —y efectivamente lo está en la resolución— y juegan las normas de procedimiento, más que sustantivas, concernientes al término y modo de aceptar o repudiar."

ser adoptado porque dicho acto rompió precisamente esas condiciones de parentesco. El mencionado artículo "eliminó la subsistencia de todo vínculo hereditario entre el adoptado y su familia natural o biológica". *Rivera Coll* v. *Tribunal Superior*, supra, pág. 329.

 Nos parece, además, que lo aquí resuelto es la solución más lógica y justa entre dos extremos inadmisibles. Por un lado, si determinásemos que en el presente caso se rompió todo vínculo hereditario, aun en caso de haber aceptación, expresa o tácita, estaríamos privando a los herederos de derechos propietarios adquiridos con dicha aceptación. Por otro lado, si permitiésemos que los adoptados acepten la herencia después de la adopción, estaríamos violando el mandato expreso del Art. 133 y lo resuelto en *Rivera Coll* v. *Tribunal Superior*, supra, lo que conduciría al absurdo que dicho caso pretendió evitar. Sin embargo, como en el presente caso no hubo prueba de los actos constitutivos de aceptación tácita o expresa, es menester devolver el caso al tribunal de instancia para que celebre una vista evidenciaria sobre dichos extremos.[11]

*Se dictará sentencia que revoque la resolución del 21 de marzo de 1985 y se devuelve el caso al Tribunal Superior, Sala de Carolina, con instrucciones de que se celebre una vista evidenciaria y se resuelva la controversia a tenor con lo aquí expresado.*

---

[11] Aunque los recurridos plantean en su oposición al expediente de dominio que hubo unas cesiones de derechos hereditarios entre los hermanos, del expediente original no surge evidencia de ello. En su oposición al presente recurso, los recurridos someten un contrato privado de cesión de derechos hereditarios y otro privado de compraventa, que no están en los autos originales, en contravención a la Regla 34(c) de nuestro reglamento. El tribunal de instancia deberá, luego de evaluar la prueba testifical y documental, determinar si tales transacciones constituyeron una aceptación tácita de la herencia por parte de los recurridos. Art. 954 del Código Civil, 31 L.P.R.A. sec. 2782. Si hubo aceptación antes de la adopción, se deben reconocer sus derechos sobre la finca objeto de este recurso. 31 L.P.R.A. sec. 2782(1).

El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Alonso Alonso no intervinieron.