*Ex parte* J. A. A., peticionaria.

*Número:* O-75-445          *Resuelto:* 22 de enero de 1976

552

*Félix Fumero Pugliessi, René Santiago Vega, Carlos René Pérez Cerra y Juan F. Arroyo Elizier,* abogados de la peticionaria; *Zulma Zayas de Santiago, Procuradora Especial de Relaciones de Familia.*

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

¿Puede una mujer soltera adoptar a una niña como hija suya sin que la adopción rompa el vínculo filiatorio de la niña con su padre biológico? Tal es la cuestión que aquí se nos plantea.

La peticionaria convivió por varios años bajo relación de concubinato con un hombre a quien llamaremos Miguel. Vigente la unión concubinaria, Miguel sostuvo relaciones íntimas con otra mujer, producto de las cuales nació una niña. La madre nunca la reconoció y la entregó al padre y a su concubina cuando la niña contaba tres días de nacida. Miguel reconoció a la niña en el acta de su nacimiento. El nombre de la madre está en blanco en el acta.

Aunque las relaciones entre la peticionaria y Miguel son cordiales, están separados, habiendo cesado el concubinato que les unía. No obstante, la peticionaria tiene consigo al único hijo que vive habido de dicha relación—otro que tuvieron murió—y a la niña hija de Miguel y de la otra mujer. La niña cuenta nueve años de edad. La peticionaria la ha criado como si fuera su propia hija, y es la única madre que la niña reconoce. Miguel mantiene con la niña las relaciones propias de padre, y contribuye a su sostenimiento.

La peticionaria quiere adoptar a la niña como hija suya y a tal fin presentó una petición al tribunal a quo. Miguel hizo constar su expreso consentimiento mediante declaración jurada. Por desconocerse el paradero de la madre de la niña, se publicaron edictos en que se le notificó de la propuesta adopción. No ha respondido en forma alguna. Referido el asunto a la correspondiente oficina regional del Departamento de Servicios Sociales para investigación e informe, dicha agencia recomendó favorablemente la adopción por considerarla beneficiosa para la niña.

La Procuradora Especial de Relaciones de Familia se opuso a la adopción. Adujo, citando los Arts. 132 y 133 del Código Civil, 31 L.P.R.A. secs. 533 y 534,(1) y lo resuelto en *Rivera Coll* v. *Tribunal Superior*, 103 D.P.R. 325 (1975), que como la adopción rompe el vínculo del parentesco entre el adoptado y su familia biológica, "la situación que pretende la peticionaria no puede subsistir en nuestro Derecho, a menos que la peticionaria fuera la esposa legítima del padre biológico" de la niña. Citó a este efecto el segundo párrafo del

---

(1) Dichos artículos disponen:

"Art. 132, 31 L.P.R.A. sec. 533. El adoptado será considerado para todos los efectos legales como un hijo legítimo del adoptante. El adoptante será considerado como el padre legítimo del adoptado.

"Art. 133, 31 L.P.R.A. sec. 534. Con [la] adopción cesarán todos los derechos, deberes y obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado."

Art. 131 del Código Civil, 31 L.P.R.A. sec. 532. ([2]) El tribunal acogió los argumentos de la Procuradora y denegó la adopción. Entiende que de concederse, la niña no podría seguir llevando el apellido de su padre. Concedió un término a la peticionaria para enmendar su solicitud.

La peticionaria ha recurrido mediante *certiorari*. Por resolución de 9 de octubre de 1975 ordenamos que se remitieran a nos los autos originales y concedimos a la Procuradora Especial un término para mostrar causa por la cual no debamos expedir el auto solicitado y revisar la resolución del tribunal recurrido. La Procuradora ha comparecido mediante un escrito en que reproduce y amplía los argumentos que adujo en primera instancia. Apoya su tésis en una interpretación literal del Art. 133 del Código Civil, 31 L.P.R.A. sec. 534, ya citado, que dice:

"Con [la] adopción cesarán todos los derechos, deberes y obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado."

Fundándonos en esa disposición dijimos en *Rivera Coll* v. *Tribunal Superior*, supra: "La adopción desarraiga al adoptado de todo vínculo de parentesco y de todo derecho respecto de su familia biológica. Borra la anterior filiación. Para todos los efectos, el adoptado se considera como si hubiera nacido hijo del adoptante." Al decir que la adopción rompe el vínculo parental entre el adoptado y su familia biológica, ¿significamos con ello el vínculo tanto de su familia paterna como de la

([2]) El Art. 131, en su totalidad, dice así:

"Art. 131, 31 L.P.R.A. sec. 532. Nadie podrá ser adoptado por más de una persona, salvo el caso en que los adoptantes estuvieren casados entre sí. Los cónyuges deberán adoptar conjuntamente, salvo los casos en que estén separados o uno de ellos esté incapacitado, en cuyos casos habrá que notificar a solicitud al otro cónyuge.

"Si la persona a quien se propone adoptar fuere hijo de uno de los cónyuges, su consorte podrá adoptarlo y la persona así adoptada será considerada hija de ambos. A este último efecto no será considerado incapacitado un cónyuge por el hecho de ser menor de edad si el otro reúne los requisitos de edad que fija la sec. 531 de este título."

materna? Entendemos que no tiene que ser así necesariamente. Ello ha de depender, en cada caso, de sus particulares circunstancias.

Nuestra legislación sobre adopción está entre las más avanzadas y liberales del mundo moderno. Es inútil buscar en otras jurisdicciones precedentes que puedan servirnos de ayuda. La *common law* de Inglaterra no conoció la adopción. De hecho Inglaterra no admitió la adopción hasta que aprobó la Adoption Act de 4 de agosto de 1926. Lacruz Berdejo, *Derecho de familia* (Barcelona, 1966). Por ello, la existencia de esta institución depende en los diferentes estados de los Estados Unidos de legislación especial al efecto, que varía en cada caso según sea la jurisdicción de trasfondo civilista o de origen anglosajón. Un intento de crear un Derecho uniforme, o de aplicación general, es la Uniform Adoption Act redactada por la National Conference of Commissioners on Uniform State Laws y recomendada favorablemente por la American Bar Association en convención celebrada en Boston en agosto de 1953. Véase el artículo del profesor Merrill, de la Universidad de Oklahoma, *Toward uniformity in adoption law*, 40 Iowa L.Rev. 299 (1954–1955), y el citado proyecto de ley que allí se transcribe íntegramente.

Los artículos de nuestro Código Civil sobre adopción, según quedaron enmendados por la Ley Núm. 86 de 15 de junio de 1953, siguen en líneas generales los mismos principios de la Uniform Adoption Act, pero su redacción es completamente distinta. Un estudio de los comentarios al margen de cada disposición de la propuesta ley uniforme no revela que los comisionados que la redactaron contemplaran la situación de hechos que aquí nos ocupa.

La tradición civilista en que se inspira la figura de la adopción, como ésta llegó a Puerto Rico, nos viene del antiguo Derecho romano vía el Código Civil español. Es interesante notar, como afirma Lacruz Berdejo en su citada obra, pág. 420, que en el Derecho romano antiguo la adopción "suponía

la adquisición, en equiparación con la filiación legítima, de la *patria potestas* sobre un hijo ajeno, que dejaba de pertenecer a su antigua familia (*adoptio*) o perdía la condición de *sui iuris* (*adrogatio*)".(³) Esta liberalidad para con el adoptado se fue perdiendo en la evolución del Derecho romano y haciéndose cada vez más restrictiva la adopción, al extremo de que los más modernos códigos de tradición civilista, por liberales que pretendan ser, no han alcanzado la plenitud que informa el Código Civil puertorriqueño en el reconocimiento del hijo adoptivo como un hijo legítimo del adoptante, a todos los efectos legales, sin limitación alguna, quedando borrado todo vestigio de parentesco y todo derecho y obligación entre el adoptado y su familia natural o biológica. (⁴)

Así las cosas, como dijimos en *Rivera Coll* v. *Tribunal Superior*, supra, la institución de la adopción como está reglada en Puerto Rico es producto de nuestra autoctonía. Está basada en legislación de avanzada, con la cual ha de andar a la par la jurisprudencia de este Tribunal. Debemos, pues, buscar la intención legislativa y enmarcar nuestra decisión acorde a los principios generales que la inspiran.

▇▇▇▇ Los artículos del Código Civil que aquí nos conciernen usan indistintamente el singular y el plural. El 130

---

(³) Señala Clark, *Law of Domestic Relations*, Ed. West Publishing Co. 1968, pág. 603, que la *adoptio* y la *adrogatio* del Derecho romano eran dos formas reconocidas de adopción, según el adoptado fuese menor de edad no emancipado (*adoptio*) o una persona adulta (*adrogatio*).

Sobre el origen de la adopción, Lacruz Berdejo (*op. cit.* pág. 420, nota 1) dice que es posible que sea religioso, y se refiere a la creencia en tiempos remotos que quien moría sin descendientes estaba destinado al desamparo en su vida de ultratumba. Encuentra precedentes en el Génesis (48, 5) : adopción de Efraim y Manasés por Jacob, su abuelo; y en el Exodo (2, 10) : la adopción de Moisés por la hija de Faraón. También en el Código de Hammurabi, en el Derecho indio y en el griego.

(⁴) Para una relación y estudio comparativo de la legislación sobre adopción en diferentes países de tradición civilista véanse, la citada obra de Lacruz Berdejo, pág. 421 y siguientes, y Fernández Clérigo, *El Derecho de Familia en la Legislación Comparada*, Ed. UTEHA, México.

establece los requisitos que debe reunir "el adoptante"; el 131, antes transcrito, (⁵) prohíbe que haya más de un adoptante, con la única excepción de que "los adoptantes" estén casados entre sí, aunque no tienen necesariamente que vivir juntos. El 134 (⁶) dice que el adoptado "usará los apellidos de los padres adoptantes", sin mencionar qué apellidos usaría cuando haya un solo adoptante, o cuando "el adoptante" sea una mujer. Aunque en ningún sitio el articulado se refiere a "la adoptante", a nadie se le ocurriría que están excluidas de serlo las mujeres. Es que, por regla elemental de hermenéutica, salvo cuando otra cosa surja del contexto de un estatuto, el singular incluye al plural, y viceversa, y el masculino al femenino. De la misma manera, cuando el Art. 133 se refiere a la "familia natural o biológica" del adoptado, no podemos limitar por interpretación dicha frase para aplicarla a una sola familia, es decir, la paterna o la materna, como tampoco limitarla a que tengan que ser ambas.

Al ser informado en la Cámara de Representantes el proyecto que se convirtió en la Ley Núm. 86 de 15 de junio de 1953, que dio la redacción actual a todo el articulado del Código Civil sobre adopción, se expresó la Comisión de lo Jurídico por voz del representante señor Santiago Polanco Abréu:

"Este anteproyecto va encaminado hacia la protección del niño, cuidando de *que no se le separe indebidamente de sus padres,* cuando pueda permanecer con ellos si se les da la debida orientación y ayuda: . . . ." (Énfasis nuestro.) *Diario de Sesiones,* Vol. II, Tomo II, pág. 1291.

Más adelante, en la pág. 1292 del mismo *Diario,* dijo el representante Polanco Abréu:

"El propósito de la adopción, tal como lo entiende la Comisión, es proveer, es dar padres a niños que no los tienen, o cuyos padres no los quieren, o no los pueden atender debidamente. En

---

(⁵) Véase el escolio 2.

(⁶) El Art. 134, 31 L.P.R.A. sec. 535, dispone:

"El adoptado usará los apellidos de los padres adoptantes, salvo que el tribunal por causa justificada determine otra cosa."

estos casos los padres adoptivos *pasan a ser los sustitutos* de los padres biológicos." (Énfasis nuestro.)

No hay duda que cuando la adopción se hace por un hombre y una mujer casados entre sí, éstos vienen a ser los verdaderos y únicos padres del adoptado, quedando desde luego disuelto el vínculo de parentesco entre el adoptado y su familia biológica, tanto por línea paterna como materna. La situación puede variar cuando la adopción la hace una sola persona, como es el caso de la peticionaria.

■ Cuando el adoptante sea una sola persona, y ésta no sea cónyuge del padre o madre del niño—caso contemplado en el segundo párrafo del Art. 131—el tribunal, en vista de las circunstancias específicas de cada caso, deberá decidir si la ruptura del parentesco biológico del adoptado opera respecto de ambas líneas, la paterna y la materna, o respecto de una sola. Nada hay en la ley que impida que el adoptado, al adquirir un padre adoptivo siga vinculado en su parentesco natural con su madre biológica, y viceversa. Al determinar los apellidos que el adoptado deberá llevar, deberá atenerse el tribunal a lo dispuesto en el Art. 134 del Código Civil, ya citado, teniendo presente que mediante la adopción debe crearse para el adoptado una situación que en lo posible se iguale a la condición natural del ser humano. Así, si adopta un matrimonio, el adoptado adquirirá los apellidos del padre y de la madre adoptantes, como si hubiera nacido hijo de ellos; si el adoptante es una sola persona y la adopción ha de desvincular al adoptado de las dos líneas de su parentesco ascendiente, adquirirá los apellidos de quien le adopta; si el adoptante es un hombre y la adopción ha de dejar intacto el vínculo del adoptado con su madre biológica, conservará el de ella como apellido materno y adquirirá el del padre adoptante como su apellido paterno; y, si la adoptante es una mujer soltera, o casada y separada de su esposo o su esposo estuviere incapacitado y no figurase como adoptante—casos que con-

templa el primer párrafo del Art. 131, antes transcrito—y la adopción dejare intacto el vínculo de parentesco entre el adoptado y su padre biológico, seguirá usando el apellido de su padre biológico y adquirirá como apellido materno el de la madre adoptante. Este último es el caso de la peticionaria.

■ Por supuesto, cuando la adopción tiene por objeto a un niño y no a una persona adulta, la decisión sobre si se autoriza o no descansa principalmente sobre la premisa de la conveniencia y bienestar del niño. Así lo reconocimos hace más de cuarenta años en *Ex parte Ortiz*, 42 D.P.R. 350, 356 (1931), y así sigue siendo. Véase *Valladares de Sabater* v. *Rivera Lazú*, 89 D.P.R. 254, 261 (1963). De igual manera lo entendió la Asamblea Legislativa al aprobar la Ley Núm. 86 de 15 de junio de 1953 que dio su actual redacción al articulado del Código Civil sobre esta materia, según se expresó en el debate sobre la medida. Véase *ante*, la cita de la pág. 1292 del *Diario de Sesiones*. De igual manera, ese principio quedó expresamente estatuido en el Art. 613 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2692, enmendado por la Ley Núm. 53 de 22 de mayo de 1968 para adicionar el requisito de que el informe de la correspondiente dependencia de Bienestar Público, hoy del Departamento de Servicios Sociales, contenga recomendaciones sobre si conviene o no "a los mejores intereses del menor o incapacitado . . . que se efectúe la adopción." Véase 32 L.P.R.A. sec. 2692, suplemento acumulativo.

La Procuradora Especial de Relaciones de Familia no ha cuestionado si la adopción conviene aquí a los intereses y bienestar de la niña. Por otra parte, hemos visto el informe sometido por la oficina correspondiente del Departamento de Servicios Sociales y recomienda favorablemente la adopción por considerarla beneficiosa para la niña, tanto desde el punto de vista de su conveniencia material como de su salud emocional.

■ No podemos pasar por alto que la niña no ha conocido otra madre que la peticionaria. Para ella sus padres son ella

y Miguel. La adopción por la peticionaria viene a consagrar ante la ley la situación de hechos que la niña ha conocido durante toda su corta vida. Consentir a la adopción por la peticionaria a base de que deje de ser hija de Miguel sería desnaturalizar el propósito legislativo. La niña puede seguir siendo hija de su padre y continuar llevando su apellido, y tener a la peticionaria como su legítima madre, y así hacerlo constar mediante la correspondiente enmienda por adición en el acta de su nacimiento.

*Se expedirá el auto solicitado y se dictará sentencia para dejar sin efecto la resolución del tribunal recurrido y ordenar la devolución de los autos a dicho tribunal para ulteriores procedimientos consistentes con lo expresado en esta opinión.*

El Juez Asociado Señor Díaz Cruz disiente y el Juez Asociado Señor Negrón García concurre en opiniones separadas.

—O—

Opinión concurrente del Juez Asociado, Señor Negrón García.

San Juan, Puerto Rico, a 22 de enero de 1976

El marco conceptual que inspiró la redacción de nuestra legislación sobre adopción es el siguiente:

"En términos generales, esta legislación que proponemos se acerca más a los conceptos modernos de adopción en todos los países que sienten preocupación por estas instituciones en nuestro Código Civil. Los proyectos consagrarían, entre otros, la esencia misma de la filosofía moderna de la adopción . . . .

.    .    .    .    .    .    .    .

.    Esta legislación que nosotros proponemos establece igualdad de derechos y deberes entre el hijo adoptado y los hijos biológicos. Establece que no deben establecerse o señalarse diferencias de clase alguna entre hijos adoptivos y los hijos biológicos.

El propósito de la adopción, tal como lo entiende la Comisión, *es proveer, es dar padres a niños que no los tienen, o cuyos*

*padres no los quieren,* o no los pueden atender debidamente. En estos casos, los padres adoptivos pasan a ser los sustitutos de los padres biológicos.

La Comisión entiende también, que la adopción no es un acto de caridad hacia los hijos menos afortunados. La Comisión entiende que la adopción es una institución de carácter esencialmente social que debe mejorarse en nuestros estatutos." (Énfasis nuestro.) *Diario de Sesiones,* Vol. II, Tomo II, pág. 1291.

El debate legislativo precisó claramente la participación de la agencia de Bienestar Público y los tribunales respecto al enfoque casuístico que había de prevalecer:

"Si por el contrario, la Legislatura adopta la teoría de fijar un número de reglas, impidiendo la adopción, estaría, a mi juicio, tratando de cubrir toda la gama y la variedad de casos que se dan con reglas generales que necesariamente tendrían que cometerse injusticias en casos particulares [*sic*].

. . . . . . . .

*El proyecto en su totalidad está inspirado en la teoría que expuse antes, de que no es la Legislatura la que de antemano va imponer* [*sic*] *esas trabas, sino que son la corte* y la agencia de Bienestar Público las que van *a imponer esas trabas en el caso particular que se trata.*

. . . . . . . .

Nosotros entendemos que esos casos debe [*sic*] quedar libre el tribunal y debe quedar libre la agencia para que, después de un estudio detenido de cada caso, determine si debe o no proceder la adopción. Pero que en la ley, no debe existir esa limitación, de acuerdo con la doctrina general de delegación en estas cuestiones que no pueden estar sujetas a reglas generales, *sino que la justicia individualizada es la que debe prevalecer en estas materias.*" (Énfasis nuestro.) Ob. cit., pág. 1464.

Lo expuesto me convence que los elementos de estabilidad, seguridad y certeza que debe caracterizar nuestra jurisprudencia, válido y extensivo a otras áreas del derecho, no pueden ser fundamentos en casos de adopción. La maternidad espiritual que la peticionaria ha engendrado con el cuidado, amor y educación que durante varios años ha dispensado a la niña protagonista de este recurso, y que intenta consolidar

jurídicamente, no puede ser a expensas de una interpretación que exija un matrimonio donde no lo hay, como tampoco de que la niña sea privada de la paternidad natural, aunque ésta sea imperfecta. Tal interpretación choca con el espíritu de la ley y nuestra misión de hacer justicia, a la par que plantea serias interrogantes sobre posible discrimen constitucional por razón de nacimiento. Art. II, Sec. 1 Constitución.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 22 de enero de 1976

Mientras convivía con su concubina la peticionaria, un hombre engendró una hija en otra mujer innominada. Esta última desapareció y el hombre tomó la niña de tres días de nacida y la entregó a la peticionaria quien la acogió como hija en igualdad con otro hijo propio. Con el tiempo el inconstante amador abandonó a la peticionaria. Habiendo la niña alcanzado la edad de nueve años, y previo el endoso del Departamento de Servicios Sociales, la ex-concubina promovió expediente para adoptarla. La sala de instancia denegó la adopción aparentemente por la única razón de que la peticionaria desea conservar para su hija adoptiva el apellido de su padre biológico.

La esencia de nuestro esquema legislativo sobre adopción está contenida en el Art. 133 del Código Civil (31 L.P.R.A. sec. 534) al expresar: "Con [la] adopción cesarán todos los derechos, deberes y obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado." La adopción es un acto solemne, caracterizado por su permanencia y efectos garantizados por las leyes civiles. Esa trascendencia fue captada con gran claridad por este Tribunal que por voz del Juez Irizarry Yunqué dictaminó en *Rivera Coll* v. *Tribunal Superior*, 103 D.P.R. 325 (1975):

"En aras de la liberalidad no podemos ir más allá de la ley. No se puede crear, por interpretación, una condición de privilegio para el adoptado, permitiendo que conserve en su familia anterior, sea biológica o sea adoptiva, todos los derechos que antes tenía, como si la subsiguiente adopción no se hubiese verificado. La adopción desarraiga al adoptado de todo vínculo de parentesco y de todo derecho respecto de su familia biológica. Borra la anterior filiación. Para todos los efectos, el adoptado se considera como si hubiese nacido hijo del adoptante. La subsiguiente adopción por otro padre tiene el mismo alcance respecto de la previa filiación adoptiva."

Tampoco hoy podemos "ir más allá de la ley" para sostener (págs. 554–555, opinión) que "Al decir que la adopción rompe el vínculo parental entre el adoptado y su familia biológica, ¿significamos con ello el vínculo tanto de su familia paterna como de la materna? Entendemos que no tiene que ser así necesariamente. Ello ha de depender, en cada caso de sus particulares circunstancias." Esta declaración sustituye la doctrina por la solución empírica, de menor juridicidad, de "caso por caso". En la adopción hay unos valores éticos y morales sobre los cuales no se puede transigir "caso por caso". *Ex Parte Warren,* 92 D.P.R. 299 (1965).

El Derecho no puede operar en un medio de fluidez y de incertidumbre que derrota el principio de igualdad bajo la ley. El gran acatamiento y respeto que la ley y por extensión la jurisprudencia han de reclamar dependen más que del rigor coactivo, de la energía moral derivada de su aplicación por igual a todas las personas y para lograr esa igualdad es indispensable una calidad de certeza y de estabilidad en la interpretación de la ley; una seguridad de que el mismo remedio se aplicará a la misma situación fáctica.

Nadie podrá ser adoptado por más de una persona, salvo el caso que los adoptantes estuvieren casados entre sí, prohíbe el Art. 131 del Código Civil (31 L.P.R.A. sec. 532). Y el Art. 133 ordena que con la adopción cesarán todos los

derechos, deberes y obligaciones del adoptado en su familia natural o biológica y los de ésta con el adoptado (31 L.P.R.A. sec. 534). La peticionaria y el padre natural de la niña a ser adoptada no están casados entre sí por lo que este caso no está comprendido en la regla especial del Art. 131 del Código Civil en cuanto autoriza que "Si la persona a quien se propone adoptar fuere hijo de uno de los cónyuges, su consorte podrá adoptarlo y la persona así adoptada será considerada hija de ambos." (31 L.P.R.A. sec. 532).

La ley es clara y fácilmente conocible en su exigencia de que medie el vínculo civil del matrimonio entre los adoptantes, o uno de ellos y el padre o madre del adoptado. Al auspiciar la adopción el Estado prefiere para el adoptado la dignidad y el sentido de pudor asociados a la unión lícita de los adoptantes; es parte de la calidad moral exigida de éstos y de la preservación de las buenas costumbres entre las cuales todavía no se cuenta la barraganería o amancebamiento. La regla es por tanto aleccionadora para todas las partes, principalmente para la niña a ser adoptada. Ella ha sido reconocida por su padre y tiene el afecto de su madre de crianza y propuesta adoptante por lo que la adopción para esta niña no representa un enriquecimiento espiritual. Ella disfruta ahora mismo de una relación afectiva personal con su padre natural y su señora madre de crianza que no ha de mejorar con la adopción, que no pasará de ser una formalidad en lo que respecta a los mejores valores implícitos en dicho acto de dar al adoptado una familia y una filiación equivalente a la legítima pues ni siquiera viven juntos los otrora concubinos. Luego lo que pide la adoptante es una ceremonia de privilegio, un tratamiento especial, una adopción sui géneris sin llenar el requisito de matrimonio; en fin la evasión del principio de que la ley civil es igual para todos sin distinción de personas. Art. 22 del Código Civil (31 L.P.R.A. sec. 22).

La adopción no debe estar disponible como traje a la

medida para quienes no están situados en el marco de su lineamiento jurídico.

El texto de la ley no deja lugar a una discreción introducida a la pág. 558 de la opinión al decir: "Cuando el adoptante sea una sola persona, y ésta no sea cónyuge del padre o madre del niño—caso contemplado en el segundo párrafo del Art. 131—el tribunal, en vista de las circunstancias específicas de cada caso, deberá decidir si la ruptura del parentesco biológico del adoptado opera respecto de ambas líneas, la paterna y la materna, o respecto de una sola."

Si lo que se interesa por la recurrente y adoptante es que la niña continúe usando el apellido "Santiago" de su padre biológico, sin más atadura legal a éste, la solución está a la mano en el Art. 134 del Código Civil (31 L.P.R.A. sec. 535) que transcribimos: "El adoptado usará los apellidos de los padres adoptantes, salvo que el tribunal por causa justificada determine otra cosa." (1)

Si la madre adoptante y la niña adoptada cuyo consentimiento cuenta si ya hubiera llegado a la edad de 10 años (Art. 135 Código Civil), así lo prefieren debe atenderse su preferencia pero no como derecho de un padre incapaz de dignificar la posición de esta familia con la calidad moral dimanante del matrimonio. Así de sencilla veo la solución y disiento de las extendidas e innecesarias expresiones que enervan el sobrio dictamen del propio juez ponente en *Rivera Coll*, supra: "En aras de la liberalidad no podemos ir más allá de la ley."

---

(1) El apellido hoy es distintivo tan intrascendente que se dispensa hasta a capricho de parte en expediente *ad perpetuam* de jurisdicción voluntaria.