Opinión concurrente y disidente emitida por la
Juez Asociada Señora Rodríguez Rodríguez.
Estoy de acuerdo con lo resuelto por una mayoría de este Tribunal en cuanto a que en el caso de autos no apli-can la doctrina de cosa juzgada ni su modalidad, el impe-dimento colateral por sentencia. Sin embargo, por enten-der que la adopción pudo carecer de causa y, por lo tanto, ser nula ab initio, disiento de la mayoría en cuanto a que la causa de acción presentada por los recurridos ha caducado. Es por ello que devolvería el caso al foro primario para que celebrase una vista en los méritos sobre la nulidad de la adopción. De igual manera, soy del criterio que, de ser la adopción ante nuestra consideración una nula por falta de causa, el adoptado estaría facultado para perseguir su fi-liación biológica durante toda la vida de su alegado padre natural, según dispuesto por el Código Civil. 31 L.P.R.A. sec. 505.
I
Samuel Beníquez (adoptado) nació el 28 de octubre de 1971. Su madre biológica, doña Antonia Beníquez (madre biológica) lo inscribió en el Registro Demográfico como hijo suyo y de padre de nombre desconocido. El 5 de junio de 1972, don Félix A. Beníquez Quiñones y doña Ada Méndez Costas (adoptantes), tíos de la madre biológica, presenta-ron una petición de adopción.
En esa petición, los adoptantes sostuvieron que habían tenido bajo su custodia al adoptado y a la madre biológica (recurridos) desde el día en que el menor nació y que po- *262 dían hacerse cargo de proveerle todo lo necesario para su desarrollo físico y espiritual. Asimismo, mediante declara-ción jurada, la madre biológica dijo que tanto ella como el adoptado vivían al amparo de los adoptantes y que para el bienestar, la felicidad y la seguridad del menor, deseaba que éste estuviese vinculado permanentemente con aque-llos en calidad de hijo. Además, durante la vista para con-ceder la adopción, los adoptantes se comprometieron a ha-cer hijo suyo al adoptado y tratarlo de igual manera que a sus hijos biológicos. Así las cosas, el Tribunal concedió la adopción el 27 de febrero de 1973 y ordenó inscribir en el Registro Demográfico al adoptado como hijo de los adoptantes.
El 30 de abril de 2003, treinta años después de decre-tada la adopción, la madre biológica y el adoptado (recurri-dos) presentaron una “Solicitud de Nulidad de Adopción” en el Tribunal de Primera Instancia, Sala de Caguas. En esa solicitud adujeron que la madre biológica fue intimi-dada y coaccionada para consentir la adopción con lo cual su consentimiento, al momento del procedimiento, estaba viciado, haciendo nula la resolución de adopción. Además, alegaron que, como cuestión de hecho, los adoptantes nunca le profesaron cariño, cuidados ni afecto al adoptado. Tampoco cumplieron con su obligación de proveer alimen-tos, cuidarlo, educarlo, ni lo tuvieron bajo su custodia. Igualmente alegaron que ambos ocuparon un cuarto de servicio en la casa de los adoptantes hasta que, en 1978, se mudaron de la residencia de éstos. Sostuvieron, también, que los adoptantes nunca reclamaron la custodia del adop-tado ni hicieron gestión alguna para mantenerlo en el ho-gar; tampoco lo trataron como si fuera hijo biológico, cosa que se obligaron a hacer en la vista de adopción.
La sala de Caguas del Tribunal de Primera Instancia emitió una notificación con fecha 18 de septiembre de 2003, donde certificó que se proveía “no ha lugar” a la so- *263 licitud de nulidad de adopción. Esa orden no contó con de-terminaciones de hecho ni conclusiones de derecho, por lo cual no conocemos sus fundamentos. Los recurridos no apelaron la orden del tribunal de instancia.
No obstante lo anterior, el 3 de noviembre de 2004, los recurridos presentaron una demanda en la que solicitaron la anulación de la adopción y declaración de filiación. En esta ocasión, además de demandarse a los adoptantes, se demandó por primera vez al señor Teófilo Vargas Seín, también conocido como Aarón, alegándose que éste era el padre biológico del adoptado. Luego de varios incidentes procesales, el tribunal de instancia desestimó la acción presentada. Fundamentó su determinación en la orden emitida por el tribunal el 18 de septiembre de 2003, en cuanto a la solicitud de nulidad de adopción. Señaló que ésta advino final y firme al no apelarse oportunamente, por lo cual el tribunal carecía de jurisdicción.
Inconformes, los recurridos presentaron recurso de ape-lación ante el Tribunal de Apelaciones. El tribunal a quo revocó la sentencia apelada, sostuvo que no se le había permitido al adoptado litigar la única causa de acción a la que tenía derecho: perseguir una acción de filiación contra quien, alegadamente, era su padre biológico. De esta ma-nera, devolvió el caso al Tribunal de Primera Instancia para que continuara con los procedimientos.
Insatisfechos, los adoptantes y Vargas Seín (peticiona-rios) comparecen ante este Tribunal afirmando que, entre otros señalamientos de error, erró el Tribunal de Apelacio-nes al determinar que la causa de acción presentada por el adoptado y su madre biológica no había caducado. No les asiste la razón. Veamos.
*264 II
A.
La adopción es la figura legal mediante la cual se busca instaurar entre dos personas una relación jurídica de filia-ción; es decir, vínculos jurídicos similares a los existentes entre una persona y sus descendientes biológicos. Feliciano Suárez, Ex parte, 117 D.P.R. 402, 406-408 (1986). De igual manera es “un acto jurídico solemne, el cual supone la rup-tura total del vínculo jurídico-familiar de una persona con su parentela biológica y la consecuente filiación de ésta con aquel o aquellos que han expresado la voluntad de que legalmente sea su hijo”. (Citas omitidas.) López v. E.L.A., 165 D.P.R. 280, 299 (2005). Reiteradamente hemos seña-lado que “el propósito primordial de esta institución [es] el bienestar del menor”. (Enfasis suprimido.) Id., pág. 300.
En cuanto a la Ley Núm. 85 de 15 de junio de 1953 (1953 Leyes de Puerto Rico 299) no albergamos duda que, al igual que la normativa vigente sobre adopción, buscaba proteger a la persona adoptada. Incluso, se decidió en aquel entonces que un decreto de adopción disolvería el vínculo jurídico con la familia biológica dado que este po-dría entorpecer la integración del adoptado al nuevo seno familiar. Véase Historial Legislativo de la Ley 85 de 15 de junio de 1953. Sobre esto hemos apuntalado que la decisión de un tribunal sobre si se autoriza o no una adopción des-cansa en la conveniencia y bienestar del niño. Ex parte J.A.A., 104 D.P.R. 551 (1976).
Cónsono con lo anterior, Eduardo Vázquez Bote señala que
[p]uede definirse la adopción como el negocio jurídico familiar por el cual se establece entre dos personas una relación perfecta de filiación legítima.
Son características de la institución, las siguientes:
a) Es un acto de carácter irrevocable. Ciertamente, la nueva redacción del Código [C]ivil vigente, nada concreta al respecto; *265 pero tal carácter deriva indudablemente por referirse al es-tado civil de las personas.
b) Es un acto formalmente determinado, sujeto en su conte-nido a una tipificación legal rigurosa.
c) Es un acto que opera como eficacia peculiar el acceso a la patria potestad, o de modificar completamente la antes exis-tente, con efectos absolutos, al romperse el vínculo del adop-tado con la familia anterior (art. 133 C.c.). E. Vázquez Bote, Derecho Privado Puertorriqueño, San Juan Ed. Butterworth de P. R., 1993, T. 11, pág. 343. Véanse, además: J. Castán Tobeñas, Derecho Civil español, común y foral, 10ma ed., Madrid, Ed. Reus, 1995, T. 5, Vol. II, pág. 361; M. Albadalejo, Curso de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 2002, Vol. IV, pág. 255; R.M. Moreno Flórez, Acto Constitutivo de la Adopción, Madrid, Ed. Colex, 1985.
Es necesario indicar que son actos jurídicos “los actos humanos voluntarios exteriores y que producen efectos jurídicos”. (Citas omitidas.) F. Puig Peña, Compendio de Derecho Civil Español, 3ra ed. rev., Madrid, Ed. Pirámide, T. I, 1976 pág. 455. Estos están caracterizados por, en primer lugar, ser voluntarios; segundo, la voluntad tiene que ser consciente y exteriorizada; por último, deben tener efectos jurídicos. Id.
Ahora bien, el negocio jurídico recoge siempre un acto jurídico. Es decir que el primero, además de ser un acto humano voluntario y exterior que produce efectos jurídi-cos, “los produce porque son queridos, ya que el agente tiende, al realizarlo, precisamente a producirlos”. M. Alba-ladeio, Derecho Civil, lima ed., Barcelona, Ed. Bosch, 1991, pág. 148.
En este sentido, un acto jurídico se diferencia de un ne-gocio jurídico porque este último se caracteriza por ser “[a]quel acto consistente o no en una declaración o acuerdo de voluntades, con el que los particulares se proponen con-seguir un resultado que el derecho estima digno de sus especial tutela, sea en [sic] base sólo a ese acto, sea com-pletado con otros hechos o actos”. C. Moreno-Luque Casa-riego, Lecciones del Negocio Jurídico, Oviedo, Ed. Aspel, *266 1987, pág. 22. Es importante establecer que el negocio ju-rídico siempre reconoce un fin que el ordenamiento en-tiende prudente proteger o tutelar por razones de política jurídica.
Así, los negocios jurídicos están compuestos por ciertos elementos sin los cuales el negocio no adviene a la vida jurídica. Federico Puig Peña señala que existen requisitos esenciales comunes a todos los negocios jurídicos y otros específicos que deben darse según el tipo de negocio que se efectúe. Elementos comunes esenciales a todos los negocios son, nos dice, la declaración de voluntad y la causa o con-dición objetiva. Igualmente hay determinados elementos negativos que impiden su nacimiento jurídico, a saber: no puede referirse a nada imposible; no puede ser ilegal; tam-poco puede atentar contra las buenas costumbres o atacar la moralidad. Véase Puig Peña, op. cit., pág. 497.
Los tratadistas difieren sobre si el negocio jurídico se extiende al Derecho de Familia. Esta discusión está funda-mentada en que algunos comentaristas entienden que, al Estado intervenir en la regulación de las relaciones fami-liares, éstas pierden el elemento volitivo existente en el Derecho Privado. Sin embargo otros, entre ellos Luis Diez-Picazo y Ponce de León, entienden que aun cuando el Es-tado regula la institución familiar por entrañar ésta un gran interés público, la voluntad de celebrar el negocio co-existe con el interés estatal en su regulación. Véase L. Diez-Picazo y Ponce de León, El negocio jurídico del derecho de familia, Madrid, Ed. Reus, 1962.
En nuestro ordenamiento no hay duda de que la adop-ción es un negocio jurídico. Sin embargo, el requisito de causa sólo se exige expresamente en los contratos; como sabemos, los contratos exigen, como requisitos esenciales, consentimiento, objeto y causa. 31 L.P.R.A. sec. 3391. Es por lo anterior que Eduardo Vázquez Bote señala que la teoría de la causa queda limitada sólo a las obligaciones contractuales. Vázquez Bote, op. cit., pág. 203. Sin em *267 bargo, conviene apuntalar lo que Diez-Picazo aclara que, el hecho de que el Código Civil español, y en nuestro caso el puertorriqueño, no hable expresamente de causa en los ne-gocios jurídicos familiares no equivale a decir que éste sea un negocio jurídico sin causa o que la causa carezca de relevancia. Así, sostiene que
[c]ausa necesariamente han de tener todos los negocios jurídicos. Sin una razón que lo justifique, el negocio carece de sentido. La causa es la razón que dota de sentido al negocio. Es, objetivamente, la finalidad práctica que el ordenamiento jurídico tutela y, subjetivamente, la común intención de las partes de alcanzar finalidad. Desde este punto de vista el ele-mento causal existe en los negocios de Derecho de [F] amiba. Diez-Picazo, op. cit., pág. 21.
En este sentido, la causa “es la función económico-social que el negocio lleva a cabo. La actividad negocial, es decir, el negocio mismo, se justifica porque sirve a una función como instrumento para lograr un fin que la sociedad es-tima relevante, digno de acometerse y de conseguirse”. Vázquez Bote, op. cit., pág. 185.
En el caso de la adopción, la causa del negocio es “brin-dar una familia a quien ha sido abandonado por la propia o carece de ella, y al mismo tiempo ofrecer la posibilidad de que críen un hijo a aquellas personas que así lo desean, concretando el propósito de actuar como padres o madres”. J.O. Azpiri, Derecho de Familia, Buenos Aires, Ed. Hammurabi, 2000, págs. 442-443. En efecto, la actividad social valorada en el negocio jurídico de la adopción es el ofreci-miento del calor de una familia a quien no la posee. El Derecho protege y estatuye la adopción dado su fin, toda vez que considera deseable y, por lo tanto, susceptible de protección, que otro haga su hijo a aquel a quien su familia biológica no quiere o que, simplemente, carece de ésta. Así, hemos dicho anteriormente que esta tiene varios propósi-tos: “[e]n el aspecto social, tiene el fin de brindarle a los niños sin padres la oportunidad de criarse y educarse como es debido en el seno de un hogar adecuado, mientras que a *268 su vez facilita a aquellas personas que loablemente han optado por acoger a esos niños como si fueran biológica-mente suyos, para atenderlos y brindarles el calor y la es-tabilidad de una familia funcional. Ello, en atención a la problemática social que aqueja a nuestra sociedad de niños abandonados o maltratados dentro de un hogar en el cual se supone que reciban amor, protección y cuidado.” (Citas omitidas.) Zapata et al. v. Zapata et al., 156 D.P.R. 278, 286-287 (2002).
Por el valor social que la institución de la adopción tu-tela, es imprescindible auscultar si ésta ha tenido causa. Esto, porque al ser un negocio jurídico familiar, “[s]i la causa es ilícita, inexistente, inasequible, el negocio tiene que resentirse en sus efectos, porque el Derecho hace posi-ble la eficacia jurídica en función de la causa”. (Citas omitidas.) Vázquez Bote, op. cit, pág. 201.
Ahora bien, lo anterior parece colisionar con el carácter perpetuo e irrevocable de la adopción. Sin embargo, tal como Puig Peña señala, ese carácter de perpetuidad es
... en el sentido de que no puede existir en su constitución ninguna interferencia restrictiva en cuanto al tiempo para ha-cer cesar ese estado. Pero de la existencia de esa especial con-dición jurídica no se infiere tampoco que necesariamente tenga que subsistir siempre la adopción, pues sobre ella deben también valer los principios que informan la cesación de los institutos jurídicos. F. Puig Peña, Compendio de Derecho Civil español, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. V, pág. 488.
Sin embargo, la irrevocabilidad de un decreto de adop-ción está dirigida a que
... el estado civil creado por la adopción no puede quedar pendiente a un cambio de voluntad o resolución unilateral del adoptante, de igual modo que no sería válida (no podría ser aprobada por el Juez) una condición resolutoria impuesta en el negocio jurídico de adopción, ni un plazo resolutorio. Tam-poco cabría admitir la extinción por mutuo disenso de las par-tes porque no puede quedar a su libre arbitrio la subsistencia de un estado civil. J. Puig Butrau, Fundamentos de Derecho *269 Civil, 2da ed., Barcelona, Ed. Bosch, 1985, T. IV, pág. 239.
Indudablemente, el mandato de irrevocabilidad está dirigido a proscribir el capricho y la arbitrariedad, no a man-tener vivo un negocio que nunca tuvo causa y, por lo tanto, no advino a la vida jurídica.
Es importante señalar que, según señala Puig Butrau, “la adopción podrá ser ineficaz en otros casos, como la nu-lidad por defecto de capacidad, por falta de consentimiento del adoptante y el adoptado mayor de catorce años, por inexistencia o ilicitud de la causa, por no haber recaído la aprobación judicial o por defecto de forma”. (Enfasis nuestro.) Puig Butrau, op. cit., pág. 239. Es lógico que sea de esta manera, porque de lo contrario se estaría mante-niendo la validez de un negocio que, a todas luces, adolece de nulidad radical o es nulo ab initio. En una adopción sin causa el adoptado no ha recibido el calor del hogar que lo hizo su hijo ni ha convivido con sus padres en el seno de la familia. Tampoco se ha roto el vínculo emocional con su familia biológica dado que es ésta quien, a pesar del de-creto de adopción, se mantiene a cargo del menor ocupán-dose de los cuidados y atenciones que este requiere. En una adopción sin causa, nunca se configura el fin principal de la institución: ofrecer padres a aquellos menores que, por múltiples circunstancias, carecen de ellos procurando el mejor bienestar e interés del niño.
B.
Un término es de caducidad cuando no admite interrup-ción o suspensión. Por lo cual, “éste siempre extingue el derecho a la causa de acción con el mero transcurso del tiempo. Su propósito es fijar de antemano el término den-tro del cual podrá ejercitarse un derecho. Una vez co-mienza a transcurrir un término de caducidad, no hay forma de revivirlo en su totalidad. Muñoz Rodríguez v. Ten General, 167 D.P.R. 297, 302 (2006).
*270 Al momento de que se decretara la adopción el Código de Enjuiciamiento Civil disponía un término de caducidad de dos años para solicitar su anulación. Luego de transcu-rrido ese término se entendía subsanado cualquier defecto del cual pudiera adolecer el procedimiento. Véase Art. 613E del Código de Enjuiciamiento Civil, 32 L.P.R.A. ant. see. 2697. No obstante, debe decirse que ese término solo puede transcurrir contra negocios jurídicos susceptibles de ser anulables, no contra aquellos que adolezcan de defecto tal que impida su advenimiento a la vida jurídica.
Así, un negocio jurídico es inexistente cuando “no puede producir la plenitud de los efectos deseados por las partes debido a la ausencia de un elemento constitutivo de tal trascendencia que le impide venir a la vida con el mínimo indispensable para gozar de capacidad vital”. (Enfasis en el original.) Puig Peña, op. cit., T. 1, pág. 660. Es por ello que “[e]l acto nulo no puede producir, ni produce, los efec-tos pretendidos por las partes y, por consiguiente, no en-gendra ni da lugar a relación jurídica de ninguna clase (quod nullum est nullum producit effectum)”. Id., pág. 664. En este sentido, tampoco se puede oponer contra un nego-cio jurídico nulo, los términos de caducidad establecidos por el ordenamiento para aquellos casos en que adolezca de defectos. Lo anterior porque la nulidad provoca que “[l]a situación jurídica [permanezca] como estaba antes del ne-gocio, y los interesados o cualquiera [puedan] seguir com-portándose, a tenor de ello, como si aquél no existiese”. M. Albaladejo, Derecho Civil, lima ed., Barcelona, Ed. Bosch, 1991, T. 1, Vol. 2, pág. 461.
III
Como señaláramos, la adopción es un negocio jurídico familiar. En tanto tal, los tratadistas establecen deben con-currir dos elementos esenciales para que éste advenga a la vida jurídica: una declaración de voluntad y la causa que *271 justifica el negocio. Un negocio que carezca de alguno de estos elementos será nulo y, por lo tanto, no producirá efec-tos jurídicos.
Igualmente, hemos visto que la causa de la adopción es proveer una familia a aquel menor que carece de ésta siem-pre procurando el mejor interés y bienestar de éste último. Por ello, la normativa imperante al momento de decretarse la adopción requería que el adoptado se tratase de manera igual que un hijo biológico. En este sentido, debía proveér-sele todos los cuidados necesarios, profesársele cariño y mantenérsele bajo la custodia de los adoptantes siempre en búsqueda de su mejor interés y bienestar. De lo contra-rio, el fin mismo de la adopción dejaría de ser el mejor interés y bienestar del adoptado y pasaría a ser mera-mente la otorgación de los apellidos del adoptante.
Además, indicamos que un término de caducidad sólo puede ser opuesto a un negocio jurídico válido. Este no puede operar contra un negocio que nunca ha advenido la vida jurídica, hacerlo de otra manera implicaría convalidar un negocio que nunca existió y conferirle efectos jurídicos a lo que nunca los tuvo.
En el caso ante nuestra consideración, los recurridos alegaron que los adoptantes jamás trataron como hijo al adoptado. Este último testimonió que los adoptantes “nun-ca cumplieron con sus obligaciones de proveer alimentos, cuidado, educación, afecto y amor hacia mí [adoptado]”, se-gún se desprende de la declaración jurada que hiciere el adoptado. Lo anterior en contravención a lo declarado por los adoptantes en la vista de adopción donde se obligaron a tratar al adoptado como hijo biológico y proporcionándole todo lo necesario para su desarrollo físico y emocional.
Al mismo tiempo, los recurridos declararon que el adop-tado siempre estuvo a cargo de su madre biológica. Además sostuvieron que luego de convivir un tiempo en un cuarto de servicio en la casa de los adoptantes se mudaron defini-tivamente de esa residencia cuando el adoptado tenía seis *272 años de edad. Según alegan, los adoptantes nunca recla-maron la custodia del adoptado.
Contrariamente, los peticionarios basan su petición de certiorari en dos argumentos principales. Primero, argu-mentan la caducidad de la acción de impugnación del de-creto de adopción y aducen que los recurridos dejaron transcurrir el tiempo y que nada hicieron para instar la acción en los términos establecidos por la ley. Por otro lado, afirman que el Tribunal de Apelaciones debió aplicar la doctrina de cosa juzgada o determinar que existía impedi-mento colateral por sentencia al caso de marras(1) Subra-yan, en lo que la lógica consideraría un argumentum ad terrorem, que la sentencia del tribunal intermedio atenta contra la estabilidad de los decretos de adopción y que, de confirmarla, estaríamos ante el fin de la institución. Ade-más, distinguen su situación de la que tuvimos ante nues-tra consideración en Martínez Soria v. Proc. Esp. Rel. Fam., 151 D.P.R. 41 (2000). Aducen que, a diferencia de Martínez Soria, donde la adoptada esperó cinco meses y una semana, luego de advenir a la mayoridad para impug-nar el decreto de adopción, en este caso se pretende impug-nar la adopción luego de transcurridos doce años a partir de que el adoptado llegara a la mayoría de edad. De igual manera, afirman que al haberse resuelto Martínez Soria, ante, por sentencia, no vincula a este Tribunal ni a nin-guno de los foros inferiores.(2)
*273 No obstante lo anterior, nada señalan para controvertir lo alegado por los recurridos en cuanto a que los adoptan-tes nunca trataron como hijo al adoptado. Tampoco des-mintieron que, como cuestión de hecho, el adoptado siem-pre convivió con la madre biológica, haciéndose cargo esta última de proveer el cuidado, sostén económico, moral y emocional del adoptado.
Las alegaciones de ambas partes parecen indicar que, en el caso que nos ocupa, nunca se configuró el negocio jurídico de la adopción. Esto toda vez que su causa apa-renta no haber existido. Los recurridos argüyeron, y los peticionarios nada dijeron para controvertirlo, que los adoptantes no le brindaron al adoptado el calor de un ho-gar, tampoco lo acogieron como si fuera su hijo biológico, siendo su madre biológica la única encargada de su cui-dado y manutención.
Más aún, nunca explicaron el porqué de la partida del adoptado junto a su madre biológica de la residencia que compartían con los adoptantes. Tampoco argumentaron haberlo procurado o reclamado su custodia. No existe evi-dencia en el expediente de que el adoptado haya convivido con los adoptantes más allá de los seis años que compartió la vivienda con éstos.
Los autos del caso dan la impresión de que el negocio jurídico de la adopción careció de causa. De ser esto así, fue nula ab initio y, por lo tanto, nunca se configuró. Si bien no podemos avalar que aquello que nunca existió nazca por el mero transcurso del tiempo, cierto es también que los mé- *274 ritos de este pleito no se dilucidaron en una vista evidenciaría. Por lo cual, antes de oponérsele el término de caducidad dispuesto en ley para la impugnación de un de-creto de adopción procede primero determinar si existió.
Es importante dejar claro que lo anterior no es una li-cencia para atacar indiscriminadamente la validez de los decretos de adopción. La adopción, cuando configurada, es un acto de carácter irrevocable que no está a la merced del arbitrio y del capricho de cualquiera de las partes. Es una norma reiterada que, en nuestro ordenamiento, un decreto de adopción establece un vínculo jurídico entre el adoptado y el adoptante que es de igual jerarquía al vínculo biológico entre un padre y un hijo. De esta manera, el adoptado que reniega de sus padres adoptivos o los padres adoptivos que reniegan del adoptado tienen los mismos remedios dispo-nibles que un hijo o un padre biológico cuando alguno de éstos no cumple con sus obligaciones o deberes.
Ahora bien, sí deben considerarse aquellos casos excep-cionales en que, como la situación que tenemos ante noso-tros, la adopción aparentemente careció de causa o adole-ció de otro defecto que haya provocado que ésta sea nula áb initio. No hacerlo implicaría amparar un estado civil que no tiene base fáctica que lo sustente. Es por esto que en-tiendo necesario que se celebre una vista en los méritos que arroje luz sobre si se configuró o no el negocio jurídico de la adopción.
IV
Por los fundamentos expuestos devolvería el caso al tribunal de instancia para que celebrara una vista en los mé-ritos sobre la existencia de causa en la adopción del Sr. Samuel Beníquez Méndez. Una vez celebrada, estará el tribunal primario en posición de determinar si procede o no oponérsele a este caso el término de caducidad de dos años dispuesto por el derogado Art. 613E del Código de Enjui- *275 ciamiento Civil, ante, a la adopción del recurrido. Estando en entredicho la validez del negocio jurídico ante nuestra consideración se hace innecesario en este momento pro-nunciarnos sobre la procedencia de la acción de filiación contra el alegado padre biológico. De decretarse nula la adopción el adoptado tendría entonces la oportunidad de llevar una acción de filiación durante toda la vida del ale-gado padre biológico.

 Por estar de acuerdo con la discusión de la doctrina de cosa juzgada y de su variante, el impedimento colateral por sentencia, expuesta en la opinión mayorita-ria, no abundaremos sobre ésta. Sin embargo, conviene resaltar lo que anteriormente hemos dicho: “[n]o se dará aplicación en forma inflexible a la defensa de cosa juzgada cuando al así hacerlo derrotaría los fines de la justicia, especialmente si hay envuel-tas consideraciones de orden público.” Véanse: Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1978); Millán v. Caribe Motors Corp., 83 D.P.R. 494 (1961); Pérez v. Bauzá, 83 D.P.R. 220 (1961).

 La Opinión Mayoritaria dedica varias páginas a discutir y reseñar la senten-cia que emitiéramos en Martínez Soria v. Proc. Rel. Fam., ante. Como sabemos, las sentencias de este Tribunal no están revestidas de la autoridad del precedente, aun-que pueden ayudarnos a ilustrar diferentes posturas sobre una controversia. Por entender que los hechos ante nuestra consideración son diferentes a los de la sen-tencia invocada, entendemos que no aplican al caso de autos los argumentos esboza- *273 dos en las opiniones que acompañaron la sentencia en Martínez Soria. Allí se trataba de una joven que al advenir a la mayoridad solicitó se impugnara el decreto de adopción mediante el cual el esposo de su madre se había convertido en su padre adoptivo. La joven sostuvo que éste la había adoptado sólo para continuar el patrón de abuso sexual que venía perpetrando desde que ésta tenía trece años. A diferencia de la controversia que tenemos hoy ante esta Curia, la joven vivía con el adoptante y su madre biológica como familia, situación de la cual éste se aprovechó para llevar a cabo sus fechorías. En ese caso resolvimos que, por las circunstancias particulares del caso, había incidido el Tribunal de Circuito de Apelaciones al desestimar la causa de acción de la joven resolviendo que ésta había caducado. Resolvimos por Sentencia toda vez que lo decidido tuvo distintos fundamentos. Martínez Soria, ante.